**Lawrence R. JONES, et al., Plaintiffs,**

v.

**Edward W. MURRAY, Director of Department of Corrections, Paul B. Ferrara, Director of Division of Forensic Science, Defendants.**

**Civ. A. No. 90–0572–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

March 4, 1991.

Harold J. Krent, PCAP Supervising Atty., Charlottesville, Va., Philip J. Psaeltiner, Third Year Student PCAF, Charlottesville, Va., for plaintiffs.

Mark R. Davis, Office of the Atty. Gen., Richmond, Va., for defendants.

## OPINION

TURK, Chief Judge.

## BACKGROUND

On October 9, 1990, plaintiffs, Lawrence Jones *et al.*, filed an action pursuant to 42 U.S.C. section 1983 challenging the constitutionality of Virginia Code sections 19.2–310.2—310.7 which direct the Virginia Department of Corrections to take and store the blood of a convicted felon for subsequent deoxyribonucleic acid (DNA) analysis. Plaintiffs sought a temporary restraining order and a preliminary injunction enjoining defendants from acting in accordance with the above-noted Virginia Code sections. Plaintiffs also moved the Court to certify a class action.

On October 12, 1990, this Court denied plaintiffs' motions for a temporary restraining order and preliminary injunction.

October 18, 1990 the parties filed a consent motion for class certification and expedited proceedings. October 26, the Court certified a class of all felons who have been or will be convicted of a felony under the laws of the Commonwealth of Virginia and who will be subject to blood tests for DNA analysis pursuant to Va.Code Ann. § 19.2–310.2 (1990).

The case is presently before the Court on defendants'[1] motion for summary judgment and plaintiffs' motion for partial summary judgment.

Virginia Code § 19.2–310.2, enacted by the 1990 General Assembly for the Commonwealth of Virginia and effective on July 1, 1990, provides that all felons convicted subsequent to July 1, 1990, all felons convicted prior to July 1, 1990 and incarcerated as of July 1, 1990, and all sex offenders convicted under Title 18.2, Chapter 4, Article 7 and incarcerated as of July, 1989 shall provide a blood sample to the Virginia Department of Corrections. Va.Code Ann. § 19.2–310.2 (1990). The blood samples are sent to the Bureau of Forensic Science within the Division of Consolidated Laboratory Services, Department of General Services (Bureau) for DNA analysis. The Bureau stores and maintains the identification characteristics resulting from the DNA analysis in a DNA data bank. Va. Code Ann. § 19.2–310.4 (1990). The information in the data bank may be released to federal, state and local law enforcement officers in furtherance of an official investigation. Va.Code Ann. § 19.2–310.5 (1990). Unauthorized use of the data bank is prohibited by law. Va.Code Ann. § 19.2–310.6 (1990).

Felons convicted subsequent to the effective date of the statute must provide a blood sample for DNA analysis upon entry into the prison system, in conjunction with the collection of blood for health-related tests. If the felon is not sentenced to a term of confinement, the blood is collected as a condition of his release on probation. Those convicted of a felony prior to July 1,

---

**1.** The Court refers to the State employee defendants as the "State", the "Commonwealth" and the "defendants" interchangeably.

1990 and within the mandate of the statute must submit to a blood test prior to being released on parole. The blood samples are analyzed by the Bureau of Forensics for DNA identification characteristics and the identification characteristics are stored in a data bank. As the statute notes, the data bank is being developed to aid law enforcement officials in investigating future violent crimes. Indeed, the data bank may be accessed for this purpose only. *See* Va. Code Ann. § 19.2–310.5, –310.6 (1990).

Plaintiffs challenge the Virginia statute on four grounds. First, plaintiffs contend the taking of blood and subsequent analysis thereof violate the fourth amendment prohibition against unreasonable searches and seizures. Second, plaintiffs assert the statute violates the felons' Constitutional right to privacy. Third, plaintiffs convicted prior to the effective date of the statute (July 1, 1990) claim the blood testing requirement violates the *Ex Post Facto* Clause. And fourth, prisoners convicted prior to July 1, 1990 contend the statute interferes with their vested liberty interest in mandatory parole because the blood test constitutes a condition of parole.

### SUMMARY JUDGMENT

This Court may grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In filing their motion for summary judgment on all counts, defendants contend that there are no genuine issues of material fact. Plaintiffs have conceded, in their motion for partial summary judgment, that there are no genuine issues of material fact with regard to the first, third, and fourth claims. The Court believes[2] there are no genuine issues of material fact that would prevent the Court from deciding any of plaintiffs' claims.

### I. PLAINTIFFS' FOURTH AMENDMENT CLAIM

■ As has been noted repeatedly, the fourth amendment protects individuals from unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The Virginia Department of Corrections and the Bureau of Forensic Sciences perform searches when taking and analyzing blood samples from persons within § 19.2–310.2. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Defendants concede this point, but contend that the searches are reasonable. The reasonableness of any search "depends on the circumstances surrounding the search." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985). Thus, the validity of a search is determined by balancing the government's interest against the privacy interest of the individual being searched. *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1978). The reasonableness of a search generally is measured by a warrant demonstrating probable cause. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

### A. Special Needs

The Supreme Court has ruled that the warrant requirement is not inflexible; there are various situations in which "special needs, beyond the normal needs of law enforcement make the warrant and probable-cause requirement impracticable." *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720 (1985) (Supreme Court held that searches of some student property could be conducted without a warrant or probable cause); *see also O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (work-related searches need not be supported by a warrant or probable cause); *Dunn v. White*, 880 F.2d 1188, 1194 (10th Cir.1989) ("The government's interest in the operation of a prison presents 'special needs beyond law enforcement that may justify departures from the usual warrant and probable cause requirements.' "). Plain-

---

**2.** Cross motions for summary judgment alone do not establish that there are no genuine issues of material fact. *See Rains v. Cascade Indus., Inc.,* 402 F.2d 241 (3d Cir.1968).

tiffs claim the Court should not abandon the warrant requirement because the State intends to use the data bank to investigate violent crimes and this purpose is within the realm of the "normal needs of law enforcement." However, plaintiffs erroneously conclude that the "special needs" analysis can never be applied where the State's interest involves law enforcement. In *Griffin v. Wisconsin,* petitioner complained that he could not be searched by a probation officer unless the officer had probable cause to believe the probationer had committed a crime or otherwise possessed contraband. The Supreme Court disagreed, holding that a probationer could be searched on less than probable cause because of his status as a probationer and in furtherance of probation objectives.[3] 483 U.S. at 880, 107 S.Ct. at 3172. The probation officer conducted a valid search where "the information provided indicate[d], ... only the likelihood ... of facts justifying the search," as required under the Wisconsin statute permitting the search. *Id.* Thus, probation, "one of the points in a continuum of punishment," and the supervision required thereunder, were deemed "special needs." *Id.* at 873–74, 107 S.Ct. at 3168.[4] The Court recognized a special need to supervise probationers based on studies showing that increased supervision decreased the incidence of recidivism. *Id.* at 875, 107 S.Ct. at 3169.[5] The Court held that a balancing test was appropriate, as was a standard which allowed a search on less than probable cause, even where the acknowledged purpose of the search was to ferret out crime. Even the dissent, while denying that probationers should be subject to warrantless searches, recognized that "the presence of *special law enforcement needs* justifies re-

sort to the balancing test." *Id.* at 881, 107 S.Ct. at 3172. (Blackmun, J., dissenting) (emphasis added). Thus, this Court believes the establishment of a data bank can be classified as a special need even if the data bank will be used in solving future crimes.

Further, the Commonwealth could not possibly meet the requirement of a warrant supported by probable cause. The very nature of the data bank refutes the possibility of establishing probable cause. The data bank will help solve future crimes; no crime has yet been committed, thus no suspicion exists. Even so, the Supreme Court has stated that "a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable." *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 624, 109 S.Ct. 1402, 1417, 103 L.Ed.2d 639 (1989). In *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Supreme Court considered the constitutional implication of drug testing certain categories of United States Customs employees. In holding the regulations valid, the Supreme Court considered and accepted the Government's argument that special needs were demonstrated in part by the fact that a warrant would provide little or nothing in the way of additional protection of personal privacy. *Von Raab,* 489 U.S. at 667, 109 S.Ct. at 1391.[6] Further, the Court allowed warrantless testing of civilian railroad workers in *Skinner* in part because "the circumstances justifying toxicological testing and the permissible limits of such intrusions are defined narrowly and specifically in the regulations that authorize them". *Skinner,* 489 U.S. at 622, 109 S.Ct. at 1415. Likewise, the intrusion performed by the

**3.** The restrictions of probation serve to help rehabilitate the individual and to shelter the community from a dangerous individual. *Griffin,* 483 U.S. at 875, 107 S.Ct. at 3169.

**4.** A "state's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement ..." *Id.* at 873–74, 107 S.Ct. at 3168.

**5.** The dissent also recognized the high rate of recidivism. *Griffin,* 483 U.S. at 883, 107 S.Ct. at 3173.

**6.** *See also Skinner,* 489 U.S. at 624, 109 S.Ct. at 1416 ("... imposing a warrant requirement in the present context would add little to the assurances of certainty and regularity already afforded by the regulations, while significantly hindering, and in many cases frustrating, the objectives of the Government's testing program.")

Virginia Department of Corrections is authorized by state law, assuring that the searches are not arbitrary, and both the scope of the search and the permissible use of its results are well defined. Plaintiffs would not be better protected if the Court required the State to obtain a warrant before obtaining a blood sample.

### B. The State Interest

Plaintiffs next assert that even if the Court should find a balancing test appropriate, the statute violates the fourth amendment because the DNA tests invade plaintiffs' privacy without a counterbalancing significant State interest.

Defendants contend the State has a substantial interest in deterring and detecting recidivist acts. The State further claims an established DNA data bank will deter repeat crimes by convicted felons because the felons will know they can be positively identified if any DNA evidence is left at the crime scene.[7] Plaintiffs challenge the government's need to establish a data bank arguing that the recidivism studies relied upon by the State are inconclusive.

The Court observes that the recidivism rate among felons is a tremendous problem. Many jurisdictions have recognized the troubling recidivism rates of convicted felons and are attempting to combat the problem through laws similar to Virginia Code § 19.2–310.2.[8] Defendants present

evidence from two studies demonstrating the high recidivist rates of convicted felons.[9] Plaintiffs dispute these studies, arguing that defendants' statistics are inconclusive because they focus on the history of known recidivists. Plaintiffs contend a proper analysis would consider the recidivism statistics of a group of released felons, thus looking to the future acts of the released felons, not their history. Plaintiffs' argument is misleading. The Commonwealth *does* refer both to the criminal history of known recidivists and to the recidivist rates of a group of released convicted felons.[10] This Court finds convincing defendants' uncontroverted recidivism evidence.[11] Further, the Court finds that defendants have stated a significant State interest in deterring and detecting recidivist acts by convicted felons.

Once the State demonstrates a significant State interest in conducting the search, the State need only show that the search "is a sufficiently productive mechanism to justify its intrusion upon the fourth amendment interests." *Delaware v. Prouse,* 440 U.S. 648, 658–59, 99 S.Ct. 1391, 1398–99, 59 L.Ed.2d 660 (1978). Defendants claim the data bank will effectively identify suspects because one's DNA is virtually unique and because one seldom has a valid excuse for leaving blood, semen, or hair roots at the scene of a crime. Plain-

---

7. An analogy may be drawn to the situation of a would-be drunk driver. It is true that many people might drive under the influence of alcohol despite the fact that alcohol consumption may cause them to drive carelessly, resulting in severe injury or death. Yet, as shown by the national statistics of drunk-driving accidents, many people are willing to take that risk, apparently because they believe there is only a slight chance of causing an accident. However, many more individuals are deterred from driving drunk when facing the very real threat of detection through road-blocks or alert police forces. *Michigan Dept. of State Police v. Sitz,* —— U.S. ——, 110 S.Ct. 2481, 2485–86, 110 L.Ed.2d 412 (1990). Likewise, it is possible that an individual who is not inhibited by the fact that particular acts are against the law and demand stiff sentences, may be inhibited by the very real possibility of detection. Thus, deterrence is reasonably related to the maintenance of a DNA data bank.

8. At least eleven states have enacted DNA statutes similar to Virginia's statute based on the recidivism rates of convicted felons. *See* Cal.Penal Code § 290.2; Colo.Rev.Stat. § 17–2–201(5)(g)(I); Ill.Stat.Ann. 38 ¶ 1005–4–3; S.Dak. Codified Laws § 23–5–14, *et seq.;* Ariz.Rev.Stat. § 31–281; Fla.Stat.Ann. § 943.325; Iowa Code Ann. § 13.10; Minn.Stat.Ann. § 609.3461; Nev. Rev.Stat. § 176.111; Wash.Code Ann. § 43.43.754.

9. *Violent Crime in Virginia,* Virginia Department of Criminal Justice Services, May 1989; *Recidivism of Prisoners Released in 1983,* Special Report, Bureau of Justice Statistics, April 1989.

10. *Creation of a DNA Test Data Exchange,* pp. 11–12; *Violent Crime in Virginia,* pp. 32–33.

11. Additionally, both the majority and the dissent in *Griffin* recognized the high rate of recidivism of probationers. *Griffin,* 483 U.S. at 875, 883, 107 S.Ct. at 3169, 3173.

tiffs argue that even if a significant number of felons commit recidivist acts, there is a low statistical chance of a convicted felon leaving sufficient DNA at the crime scene to allow suspect identification. Yet, plaintiffs do not dispute the State's argument that DNA will be left at up to thirty percent of violent crime scenes. Plaintiffs instead argue that thirty percent is not good enough to warrant DNA testing.

The Court believes that a method that may one day help solve up to thirty percent of violent crimes in Virginia is not an insignificant effort. Nor would it be insignificant if the figure were lower.[12] The Court cannot and will not interject its views of efficiency where the State's goal and the procedures for obtaining that goal are reasonable and not arbitrary. The Court holds only that the DNA testing procedure bears a "close and substantial relation" to the State's goal of detecting suspects and deterring recidivism by convicted felons. *See National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 676, 109 S.Ct. 1384, 1396, 103 L.Ed.2d 685 (1989).[13]

### C. Plaintiffs' Privacy Interest

In applying the balancing test, the Court must consider the extent of the intrusion of plaintiffs' privacy in relation to the significance of the State interest. A warrant almost always is required for searches intended to discover evidence of a past crime. The warrant requirement exists, *inter alia,* to protect individuals from arbitrary, invasive searches. *New York v. Burger,* 482 U.S. 691, 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987). For several reasons, the Virginia statute does not implicate these concerns.

Plaintiffs assert that because the needle must delve beneath the prisoner's skin, and because blood is extracted, the intrusion is great. However, this contradicts current law. The State undoubtedly performs a search in extracting plaintiffs' blood. Yet, this search is minimal. *Schmerber v. California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) (blood tests are commonplace and experience has shown that "for most people the procedure involves virtually no risk, trauma, or pain." Further, "the Constitution does not forbid the States minor intrusions into an individual's body...") Indeed, the search is unquestionably minimal for those felons incarcerated after the statute's effective date. The State requires the Department of Corrections to draw blood from all newly committed felons in order to conduct valid health-related tests. Thus, felons incarcerated after July 1, 1990 need only supply an extra vial of blood to satisfy the DNA statute.

To the extent that the DNA analysis reveals identification characteristics only, plaintiffs do not indicate a legitimate expectation of privacy. The Supreme Court has stated that persons detained for fingerprinting may experience less serious intrusions than persons subjected to most other searches and detentions. *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). This is true because "[f]ingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass any individual, since the police need only one set of each person's prints." *Id.* at 727, 89 S.Ct. at 1398. Similarly, although plaintiffs portray DNA analysis as the key to one's physical and mental predisposition, the only characteristics available for use by the government are the DNA's identification

---

12. If the data bank aids law enforcement in solving less than twenty-five percent of violent crimes, the deterrent effect of such a tool would still appear to be significant.

13. Plaintiffs argue that the State has no interest in testing felons convicted prior to July 1, 1990 because Virginia Code section 19.2–310.2 does not require the Department of Corrections to test this group of felons. As noted in the Court's opinion denying plaintiffs' motion for a temporary restraining order, the Court disagrees with plaintiffs' interpretation of the Virginia Code. The code does provide for testing of those incarcerated on July 1, 1990 even though they were convicted prior to that date. The code merely exempts those convicted of felonies prior to July 1, 1990 but not incarcerated as of that date. Thus, the code might exempt those on parole as of July 1, 1990 and those serving suspended sentences as of July 1, 1990.

characteristics. The State may not analyze the samples for any other reason and therefore may not probe into plaintiffs' private lives and thoughts. Va.Code Ann. §§ 19.2–310.2, 19.2–310.6 (1990). Further, the government needs only one sample on file, and has no further excuses to conduct harassing searches.[14]

The stored information is available only to law enforcement personnel in furtherance of an official investigation of a criminal offense. Va.Code Ann. § 19.2–310.5 (1990). In addition, the identifying information is disseminated to the law enforcement officer only if the sample provided by the officer matches a sample in the data bank. *Id.* The procedures followed are sufficiently stringent such that no person, including a law enforcement official, may conduct random searches in the data bank.

If the DNA of a sample found at the scene of a crime matches a file sample, the State will learn no more than the identity of the perpetrator. The individual has no Constitutional right to privacy in his identity. If the sample does not match a particular felon's DNA, the government has learned nothing, except that the particular felon probably was not the perpetrator of the crime. Law enforcement officials certainly do not have the capacity to glean one's genetic history from a DNA sample. Plaintiffs raise the spectre of further invasions of privacy once the scientific community achieves advances in DNA analysis. This matter must be addressed at a later date, as it is a hypothetical concern at this time.[15]

Further aiding the Court's decision is the fact that plaintiffs' privacy interests differ in magnitude from that of the general population. For, although convicted felons do "not forfeit all constitutional protections by reason of" their conviction,[16] prisoners, incident to their status as convicted felons, relinquish some expectation of privacy. *Bell v. Wolfish,* 441 U.S. 520, 537, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979). For example, prisoners are required to submit to searches of their cellblocks, body cavity searches, and health tests. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Dunn v. White,* 880 F.2d 1188 (10th Cir.1989) (upholding mandatory blood testing of prisoners for AIDS). Prisoners also do not retain the same first amendment rights as the general population. *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 129, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1976). Further, depending on federal and state law, convicted felons may lose the right to vote and the right to bear firearms, and may have only conditional liberty rights, due to their status as a convicted felon even after they exit the prison system. *See Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1973); 18 U.S.C. § 922(g)(1) (1990); *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972).

Because plaintiffs' limited interest in not providing a blood sample is outweighed by the very important interest of the State in deterring and detecting recidivist acts, and because the DNA data bank bears a close and substantial relation to the State's interest, this Court holds that the challenged Virginia statute does not violate plaintiffs' fourth amendment rights.

## II. PLAINTIFFS' CONSTITUTIONAL RIGHT TO PRIVACY

Plaintiffs contend that the State violates plaintiffs' right to privacy when it

---

**14.** The fact that plaintiffs have filed four affidavits claiming that the State took certain individuals' blood samples more than once for DNA analysis does not affect this Court's judgment. Infrequent episodes of administrative inefficiency are not of constitutional magnitude. Further, plaintiffs do not claim that the officials involved intended to harass those from whom the blood was taken.

**15.** While it is true that one day scientists may be able to identify genetic defects and one's heritage from a single strand of DNA, no one contends that this capability exists today. To obtain genetic information, scientists schooled in the very specific science of DNA analysis must closely examine the genetic strand using various processes. The regulation in question does not permit such analysis; nor are law enforcement officials schooled in such analytical techniques.

**16.** *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

analyzes the blood samples of convicted felons and stores the profiles in a data bank. This claim is attributed to the belief that DNA automatically provides information regarding one's physical and mental predisposition and this information may be available to a wide number of people. As previously noted, the State regulation permits the Bureau to analyze the DNA for identification characteristics. Va.Code Ann. § 19.2–310.2 (1990). Only the information indicating identification may be stored. To the extent that the DNA analysis reveals identification characteristics, the Court believes the plaintiffs indicate no legitimate expectation of privacy. *See Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969). Further, the State has a compelling interest in using the DNA data bank to detect and deter recidivist acts of violent felons.

### III. THE *EX POST FACTO CLAUSE* AND PLAINTIFFS' VESTED LIBERTY INTEREST

Plaintiffs also claim that Virginia Code sections 19.2–310.2 and 19.2–310.6 violate the *Ex Post Facto* Clauses of Article I of the Constitution.[17] Plaintiffs contend that because prisoners who refuse to comply with the testing procedure may be detained beyond their parole date, the law is *ex post facto* as to those convicted prior to the enactment of the statute. In addition, plaintiffs argue that the law violates the liberty interests of all those who have been granted parole or those within the mandatory parole requirements but not released solely due to their noncompliance with the testing procedures.

**17.** Article I of the Constitution provides that "neither Congress nor any state shall pass any '*ex post facto law*'." *See* Art. I, § 9, cl. 3; Art. I, § 10, cl. 1; *Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987).

**18.** *Calder v. Bull*, defines an *ex post facto* law as "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal

### A. The *Ex Post Facto* Clause

■ A statute violates the *Ex Post Facto* Clause if the law alters the legal consequences of acts occurring before its enactment to the disadvantage of the offender affected by it.[18] Though the DNA analysis statute did not become effective until July 1, 1990, prisoners convicted prior to July 1990 must provide the State with a blood sample prior to release from prison. Plaintiffs claim that the law is invalid in two respects. First the prisoners must give a blood sample for DNA testing, a requirement that did not exist on the date of conviction. Second, if the prisoners refuse to give a blood sample they are detained regardless of whether parole has been granted, or whether they have attained their mandatory parole or release date.

■ The State argues strenuously that prisoners are not required to give a blood sample as a condition of parole eligibility. The State's position is understandable because the Fourth Circuit has held that parole eligibility is part of the law annexed to the crime at the time of a person's offense. *Schwartz v. Muncy*, 834 F.2d 396, 398 n. 8 (4th Cir.1987).[19] Thus, if the State conceded that the blood test is a requirement of parole eligibility, the law clearly would be *ex post facto*.

Accepting the State's contention that the blood sample is not a requirement for parole eligibility, the Court must analyze the statute in accord with Supreme Court *ex post facto* precedent. In considering whether a federal statute denying an army deserter United States nationality violated the *Ex Post Facto* Clause, the Supreme

rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis omitted).

**19.** The Fourth Circuit has held that "statutes enacted or amended after a prisoner was sentenced cannot be applied to alter the conditions of or revoke his or her preexisting parole eligibility—notwithstanding that the conduct purportedly triggering application of the statute occurred after its enactment." *Fender v. Thompson*, 883 F.2d 303, 306 (4th Cir.1989).

Court noted that "this Court has generally based its determination [of whether a statute violates the *Ex Post Facto* Clause] upon the purpose of the statute." *Trop v. Dulles,* 356 U.S. 86, 96, 78 S.Ct. 590, 595, 2 L.Ed.2d 630 (1958) (plurality opinion). The requirement that prisoners provide blood samples is not punitive in nature. Prisoners are not being punished for a prior wrong and no additional time is added to their sentence. The Virginia legislature did not intend to punish the felons through the newly enacted statute. The blood sample is taken and analyzed for the sole purpose of establishing a data bank which will aid future law enforcement.

As noted previously, plaintiffs have a diminished expectation of privacy due to their incarceration. Depending on federal and state law, convicted felons may lose the right to vote and the right to bear firearms, and may have only conditional liberty rights, due to their status as a convicted felon even after they exit the prison system. *See Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1973); 18 U.S.C. § 922(g)(1) (1990); *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). Likewise, plaintiffs are now required to submit to a blood test to facilitate the creation of what the State hopes is a more advanced system of identifying recidivist violent felons.

The Court has no doubt that the blood sample is taken, not to punish the prisoner for his convict status, but for the administrative purpose of establishing the DNA data bank. The fact that the statute may impose some insubstantial hardship on the individual does not convert the statute into an *ex post facto* law. *Dulles,* 356 U.S. at 96, 78 S.Ct. at 595. Because the Court finds the matter to be procedural and because "no *ex post facto* violation occurs if the change in the law is merely procedural and does not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt," the Court holds that the requirement to submit to a blood test does not violate the *Ex Post Facto* Clause. *Hopt v.*

*Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

Plaintiffs contend that even if the blood sampling is not deemed punishment, the fact that prisoners who refuse to comply with the testing procedure may be detained beyond their parole date causes the law to be *ex post facto* as to those convicted prior to the enactment of the statute. However, the statute cannot be dissected in such a manner. The prisoners are not detained further because the State wishes to punish a prisoner for a past crime. The State grants the prisoner parole regardless of whether he has given blood. Affidavit of Eva Ferguson, 5. Instead, the prisoner is held because he refuses to provide a blood sample.

In the absence of evidence to the contrary, the Court finds the condition is not a requirement of parole eligibility as defendants assert. The facts of this case are not analogous to those cases which prohibited the government from altering the substantive requirements for parole eligibility. *Fender v. Thompson,* 883 F.2d 303 (4th Cir.1989) (The court considered a state statute that denied parole to prisoners who escaped while serving a life sentence. The Court held the law violated the *Ex Post Facto* Clause because petitioner was otherwise eligible for parole on the life sentence and the statute prohibiting parole was enacted after petitioner's conviction.); *Parton v. Armontrout,* 895 F.2d 1214 (8th Cir.1990) (court invalidated requirement that petitioner participate in a sex offender program before he was eligible for parole even though the requirement was not enacted until after petitioner was convicted of rape).

### B. Liberty Interest

■ Defendants argue that, though not a condition of parole eligibility, compliance with the statute is a requirement to walk out the prison's door. Thus, it is a condition of parole, similar to requirements that the parolee submit to drug testing and not disobey any laws of the State or federal government. However, the Court is not persuaded by defendants' reasoning. Conditions of parole are enforced after the parolee leaves the State's custody and are enforced for the purpose of supervising

and aiding the prisoner's reintegration into society. *Morrissey v. Brewer*, 408 U.S. at 477, 92 S.Ct. at 2598; *Owens v. Kelley*, 681 F.2d 1362 (11th Cir.1982). When the State detains prisoners for failure to provide a blood sample for DNA analysis, the State cannot contend that the prisoner has violated parole or that the State is supervising a parolee.

Defendants acknowledge that those prisoners who have served their full sentence may not be detained merely because they have not complied with the DNA statute. If compliance with the DNA statute is truly not a requirement for parole eligibility, the Court cannot discern any difference, for the purposes of this case, between those who have served their full sentence and those who have been granted parole status or are within the mandatory parole provision.

The State requires the Department of Corrections to obtain blood samples, but does not outline procedures to be followed when a prisoner refuses to comply with the statute. Reading the statute in a constitutional manner,[20] the Court holds that the prisoner must be given some process before he is held beyond his established parole release date. The Court suggests that twenty days before a prisoner is to be released,[21] the Bureau of Prisons should attempt to obtain his blood sample if there is not one on file. If the prisoner refuses, the Commonwealth may then apply to a state court for an order requiring the prisoner to submit to a blood test in accordance with Virginia Code section 19.2–310.2. The state court, barring any valid objections, can then require the prisoner to comply with the valid statute, or face appropriate consequences, including detention until such time as the prisoner submits to a

blood test.[22] These procedures provide that the state-created right to mandatory parole is not abrogated arbitrarily and that prisoners' liberty interests are not offended. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).[23]

## CONCLUSION

The Court finds that the Commonwealth of Virginia advances a special need to develop a DNA data bank which will enable the state to detect and deter violent crimes. Further, this Court holds that Virginia Code section 19.2–310.2 does not violate plaintiffs' fourth amendment rights because plaintiffs' limited interest in withholding a blood sample is outweighed by the substantial State interest in deterring and detecting recidivist acts. Plaintiffs' privacy interests are not violated because the DNA testing reveals plaintiffs' identification only and the statute is narrowly drawn to prevent abuse by law enforcement officials. The statute does not violate the *Ex Post Facto* Clause because the legislature did not intend to punish convicted felons for their past crimes through this statute, the blood tests are not conducted so as to inflict any punishment upon the prisoners, and the blood test requirement is not a condition for parole eligibility as plaintiffs assert. Finally, the Court holds that the statute may be read so as not to violate plaintiffs' liberty interests.

Accordingly, an appropriate Order shall be entered this day granting defendants' motion for summary judgment.

20. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).

21. This procedure would apply to prisoners who have been granted parole but are awaiting their release date, prisoners who must be released in compliance with Virginia Code section 53.1–159 (mandatory release statute), or prisoners who have served their full sentence.

22. Prisoners obviously could not claim that the testing procedure violates their fourth amend-

ment rights, or their privacy interests. However, the above-detailed procedure would allow prisoners to otherwise challenge the constitutionality of the DNA testing procedures as applied to that particular individual.

23. Because the statute does not address procedures to be taken if a felon refuses to participate in the blood testing program, the Court suggests these procedures. The State may apply any other process it deems appropriate in furtherance of the DNA testing scheme.