94 P.3d 345 (2004)
122 Wash.App. 448
STATE of Washington, Respondent,
v.
Antoine Robert SURGE; Christopher Yarbrough; Shabray McMurry; James McClinton; Ricardo Guzman-Gil; Allen Bowman, Appellants.
Nos. 51954-9-I, 52303-1-I, 52373-2-I, 52472-1-I, 52704-5-I, 52277-9-I.
Court of Appeals of Washington, Division 1.
July 12, 2004.
Reconsiderations Denied August 23 and September 22, 2004.
*346 David B. Koch, Jennifer Dobson, Eric J. Nielsen, Gregory Charles Link, Maureen Cyr, Seattle, WA, for Appellants.
Carla Barbieri Carlstrom, King County Pros. Atty., Seattle, WA, for Respondent.
KENNEDY, J.
Following their felony convictions, the appellants in these six consolidated appeals were ordered to submit to a collection of biological samples for purposes of DNA identification analysis as required by RCW 43.43.754. Each appellant raises the same issue on appeal: whether our state supreme court's opinion in State v. Olivas, 122 Wash.2d 73, 856 P.2d 1076 (1993) upholding an earlier version of this same statute under Fourth Amendment "special need" analysis is still good law, in light of intervening United States Supreme Court and Ninth Circuit authority. In United States v. Kincade, 345 F.3d 1095 (9th Cir.2003), a panel of the Ninth Circuit Court of Appeals held that a similar federal statute violates the Fourth Amendment. The Kincade court refused to follow Ninth Circuit precedent to the contrary, reasoning that the prior case had been undermined by two intervening United States Supreme Court cases.
But while these appeals were pending, the Ninth Circuit ordered that Kincade be reheard en banc. See, United States v. Kincade, 354 F.3d 1000 (9th Cir.2004) (ordering *347 that the case be reheard and that the three-judge panel opinion not be cited as precedent pending further ruling of the court en banc). At this writing, an en banc opinion has not been issued in Kincade.
We disagree with the Kincade majority's conclusion that intervening United States Supreme Court case law has effectively overruled Ninth Circuit precedent that is consistent with Olivas. We believe that the Olivas court properly concluded that the drawing of blood from convicted felons to establish a DNA databank serves a special need beyond normal law enforcement that properly may be balanced against the privacy interests of convicted felons. But even if the Olivas court's special needs analysis is analytically flawed, our DNA statute nevertheless passes Fourth Amendment muster under a different exception to the general warrant requirement, in that obtaining biological samples from convicted felons serves a compelling state interest, the means of collecting such samples are minimally intrusive, and convicted felons have no reasonable expectation of privacy in such identifying markers as their fingerprints and DNA. Accordingly, we affirm the judgments and sentences here at issue.

FACTS
Antoine Surge pleaded guilty to murder in the second degree. (No. 51954-9). Christopher Yarbrough was found guilty by a jury of two counts of robbery and one count of burglary. (No. 52303-1). Shabray McMurry was found guilty by a jury of bail jumping. (No. 52373-2). James McClinton pleaded guilty to unlawful possession of cocaine. (No. 52472-1). Ricardo Guzman-Gil entered an Alford[1] plea to one count of third degree rape of a child and one count of second degree assault. (No. 52704-5). Allen Bowman entered an Alford plea to one count of possession of stolen property in the second degree. (No. 52277-9). As part of their sentences, all six defendants were required to provide DNA samples to the State's DNA databank as required by RCW 43.43.754. All six defendants appeal the portion of their sentences that require compulsory DNA samples. A motion to consolidate the appeals was granted.

DISCUSSION

I. RCW 43.43.754 and the Fourth Amendment

The statute at issue on appeal, RCW 43.43.754(1) provides:
Every adult or juvenile individual convicted of a felony, stalking under RCW 9A.46.110, harassment under RCW 9A.46.020, communicating with a minor for immoral purposes under RCW 9.68A.090, or adjudicated guilty of an equivalent juvenile offense must have a biological sample collected for purposes of DNA identification analysis[.]
Although Surge and the State have filed a stipulation that King County's preferred procedure for collecting DNA for purposes of RCW 43.43.754 is cheek swabs, a state regulation appears to provide for DNA analysis to be accomplished through blood samples. See, WAC 446-75-060. The appellants collectively assert that RCW 43.43.754 and WAC 446-75-060 violate the Fourth Amendment prohibition against unreasonable searches and seizures.
A threshold question is whether the challenged governmental act is a "search" or "seizure" within the scope of the Fourth Amendment. Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Courts generally agree that the collection and analysis of biological samples from an individual constitutes a search for purposes of the Fourth Amendment. See, e.g., Ferguson v. City of Charleston, 532 U.S. 67, 76, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (urine tests conducted by state hospital staff members were indisputably searches within the meaning of the Fourth Amendment); Skinner, 489 U.S. at 616, 109 S.Ct. 1402 ("compelled intrusion into the body for blood to be analyzed for alcohol content" is deemed a Fourth Amendment search.); In re Shabazz, 200 F.Supp.2d 578 (D.S.C.2002) (grand jury subpoena for saliva sample constitutes a search within the meaning *348 of the Fourth Amendment). Thus, we conclude that the samples taken here constituted a search for purposes of the Fourth Amendment, regardless of whether the samples were obtained by drawing blood or by cheek swabs.
"The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures." United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). What is reasonable "`depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'" Skinner, 489 U.S. at 619, 109 S.Ct. 1402 (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985)). Whether a particular practice is permissible "`is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" Skinner, 489 U.S. at 619, 109 S.Ct. 1402 (quoting Delaware v. Prouse, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed. 2d 660 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)).
Generally, a search is not reasonable unless it is based on a warrant issued upon probable cause. Skinner, 489 U.S. at 619, 109 S.Ct. 1402. An exception to this general rule arises when "`special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" Skinner, 489 U.S. at 619, 109 S.Ct. 1402 (quoting Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). When faced with legitimate special needs, the United States Supreme Court has not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context. Skinner, 489 U.S. at 619, 109 S.Ct. 1402.
The high court has upheld warrantless searches as reasonable in various "special need" situations, including drug testing of railroad employees without individualized suspicion because of safety issues inherent in the work, minimal intrusiveness of urine testing, and reduced expectation of privacy of employees of highly regulated industries (Skinner, 489 U.S. at 624-27, 109 S.Ct. 1402); work-related searches of government employees' desks and offices without suspicion of wrongdoing because of interest of employers in conducting business efficiently and reduced expectations of privacy of employees at work (O'Connor v. Ortega, 480 U.S. 709, 721-26, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987)); search of a student's property by school officials based on a suspicion that the student was violating school policy, balancing the privacy interests of the student with the substantial need of the school to maintain order (New Jersey v. T.L.O., 469 U.S. at 333, 337-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)); validating the search of a probationer's home based on State's interest in operating its probation system, the probationer's conditional liberty, and suspicion that the probationer had a weapon (Griffin, 483 U.S. at 873, 107 S.Ct. 3164); and validating visual body cavity searches of prison inmates after balancing the significant security interests of the prison against the privacy interests of the inmates (Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).
Congress and all 50 states have enacted legislation similar to RCW 43.43.754 requiring the establishment and maintenance of DNA databases of convicted criminal offenders. See, e.g., Landry v. Attorney General, 429 Mass. 336, 343-44, 709 N.E.2d 1085, 1090 (Mass.1999) (citing cases), cert. denied sub nom. Landry v. Reilly, 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000); 42 U.S.C. §§ 14131-35. A number of these statutes have withstood Fourth Amendment challenges. See, e.g., Groceman v. United States Dep't of Justice, 354 F.3d 411 (5th Cir.2004); United States v. Kimler, 335 F.3d 1132 (10th Cir.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 945, 157 L.Ed.2d 759 (2003).
Our own Supreme Court has previously addressed whether an earlier version of RCW 43.43.754 fits within the Fourth Amendment "special need" exception in State v. Olivas, 122 Wash.2d 73, 856 P.2d 1076 (1993). The previous version of the statute limited mandatory DNA blood testing to felons convicted of violent or sexually-related crimes, Olivas, 122 Wash.2d at 83, n. 17, 856 *349 P.2d 1076, but in upholding the statute the Olivas court relied on Jones v. Murray, 763 F.Supp. 842 (W.D.Va.1991); aff'd in part, rev'd in part, 962 F.2d 302 (4th Cir.1992). Jones addressed a statute that allowed DNA testing of all felons and extended the "special need" exception to the statute based on the theory that establishing a DNA database would be a deterrent to recidivists and that its purpose was not for "normal" law enforcement. Olivas, 122 Wash.2d at 92, 856 P.2d 1076. The Olivas court agreed with Jones and held that drawing of blood from convicted felons to establish a DNA data bank was a "special need" beyond normal law enforcement. Olivas, 122 Wash.2d at 92-93, 97-98, 856 P.2d 1076.
Appellants assert that Olivas is no longer good law. Following the reasoning of the majority in Kincade, the appellants cite Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), cert. denied, 539 U.S. 928, 123 S.Ct. 2583, 156 L.Ed.2d 605 (2003), and City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) for this proposition. Ferguson addressed the practice of a state-run hospital providing urine test results from unsuspecting pregnant women to law enforcement officials for drug prosecutions. Ferguson, 532 U.S. at 69-70, 121 S.Ct. 1281. Weighing the intrusion on the individuals' interest in privacy against the claimed "special need," the Ferguson court first noted that the invasion of the patients' privacy was "far more substantial" than in previous cases involving drug testing of railroad employees, U.S. Customs agents, and high school students interested in participating in athletics. Ferguson, 532 U.S. at 77-78, 121 S.Ct. 1281 (citing Skinner, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639; Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)). The court then stated that the searches were not justified under the "special need" exception because the State's primary purpose was to generate evidence for the specific purpose of incriminating the patients. Ferguson, 532 U.S. at 79-83, 121 S.Ct. 1281. Thus, the court held that the practice violated the women's Fourth Amendment rights against unreasonable search and seizure. Ferguson, 532 U.S. at 85-86, 121 S.Ct. 1281.
Edmond analyzed the constitutionality of a city highway checkpoint program where vehicles were stopped, their interiors visually inspected from the outside, and drug-sniffing dogs were taken around the exteriors of the vehicles. Edmond, 531 U.S. at 34, 121 S.Ct. 447. In determining whether individualized suspicion was required to justify the stops, the court considered "the nature of the interests threatened and their connection to the particular law enforcement practices at issue." Edmond, 531 U.S. at 42-43, 121 S.Ct. 447. The court ultimately held because the primary purpose of the highway checkpoints, to intercept drivers with drugs and to charge them with drug crimes, was indistinguishable from the general purpose of crime control, the program violated the Fourth Amendment. Edmond, 531 U.S. at 48, 121 S.Ct. 447.
Appellants argue that the sole purpose of RCW 43.43.754 is to facilitate normal law enforcement, thus, the warrantless, suspicionless searches it authorizes do not fall under the "special need" exception. They point out that when the statute was expanded to include juveniles in 1994, after the Olivas opinion, the Legislature stated, "DNA identification analysis is an accurate and useful law enforcement tool for identifying and prosecuting sexual and violent offenders." Laws 1994, Ch. 271, Sec. 401. They also point out that when the Legislature further expanded the statute in 1999 to include DNA testing of all felons, the Legislature stated:
[t]here is a high rate of recidivism among certain types of violent and sex offenders ... [c]reating an expanded DNA data bank bears a rational relationship to the public's interest in enabling law enforcement to better identify convicted violent and sex offenders who are involved in unsolved crimes, who escape to reoffend, and who reoffend after release.
Laws 1999, Ch. 329, Sec.1.
Appellants assert that because it is clear that the primary purpose of RCW 43.43.754 is general law enforcement, Ferguson and *350 Edmond mandate that the "special need" exception does not justify their warrantless searches and that individualized suspicion of wrongdoing is thus required for the search. We disagree.
Neither Ferguson nor Edmond addressed incarcerated individuals or their reduced privacy rights, previously recognized by the U.S. Supreme Court in Griffin, 483 U.S. 868, 107 S.Ct. 3164 and Bell, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447. Ferguson and Edmond focus on non-incarcerated individuals and Ferguson involves the extremely high expectation of privacy of patients receiving medical care. Neither case addresses creation of a DNA database for the purposes of identifying inmates and curbing future recidivism. Rather, both Ferguson and Edmond focused on situations involving coordinated efforts by law enforcement to find evidence of immediate crimes and to prosecute specific individuals based on that evidence.
Defendants also cite United States v. Kincade, 345 F.3d 1095 (9th Cir.2003), a case that analyzed a Federal statute that requires a parolee to provide a DNA sample to the Federal DNA database. Kincade, 345 F.3d at 1099; 42 U.S.C. § 14135a(a)(2). In the view of the Kincade majority, Ferguson and Edmond undermine the reasoning of an earlier Ninth Circuit case in which the court upheld an Oregon statute requiring certain convicted felons to submit blood samples for a DNA databank  Kincade, 345 F.3d at 1107-08 (citing Rise v. State of Oregon, 59 F.3d 1556 (9th Cir.1995)). Accordingly, the Kincade majority declined to follow Rise and held that a DNA database is not a "special need" but rather is a normal law enforcement need that is not subject to "special needs" analysis. Kincade, 345 F.3d at 1104-10. The court ultimately concluded that the federal statute violates the Fourth Amendment. Kincade, 345 F.3d at 1113-14.
But the Ninth Circuit has recently vacated the Kincade opinion in United States v. Kincade, 354 F.3d 1000 (9th Cir.2004), and ordered that the case be reheard en banc. At this writing no en banc decision has been issued.
We note that a recent Seventh Circuit case, Green v. Berge, 354 F.3d 675 (7th Cir.2004) criticizes the analysis of the Kincade majority. Green addresses a Wisconsin statute that requires all felons to give DNA samples for analysis. Green, 354 F.3d at 676. The Green court noted that all 50 states had similar statutes. The Green court recognized that although the U.S. Supreme Court has yet to address the validity of DNA collection statutes under the Fourth Amendment, state and federal courts are nearly unanimous, with the exception of Kincade, in holding that these statutes do not violate the Fourth Amendment, because of the limited privacy interest of prisoners, the minimal intrusion of blood drawing, and because the government has a "special need" to obtain identification DNA for purposes of establishing a DNA database. Green, 354 F.3d at 677 (citing Nicholas v. Goord, 2003 WL 256774 (S.D.N.Y.2003) (and cases contained therein); Kimler, 335 F.3d at 1146; Shelton v. Gudmanson, 934 F.Supp. 1048 (W.D.Wis.1996)).
The Green court agreed with these other courts and distinguished both Ferguson and Edmond. The court pointed out that neither Ferguson nor Edmond address safe, nondiscriminatory collection of DNA samples from lawfully incarcerated felons, the situation presented in all DNA database cases. Green, 354 F.3d at 678-79. The court held that the statute in question comported with Fourth Amendment reasonableness requirements under the "special need" doctrine, in part because it was not undertaken for the investigation of a specific crime but to obtain reliable proof of a felon's identity. Green, 354 F.3d at 678-79.
The concurring opinion in Green emphasizes that the Kincade court failed to recognize that what constitutes a "reasonable" search under the Fourth Amendment for a felon or parolee is necessarily different from a "reasonable" search for a person who has never been convicted of a crime. Green, 354 F.3d at 679 (quoting Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("`the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell'"); Bell, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (upholding prison body cavity search in absence of suspicion of criminal *351 activity)). The concurring opinion in Green also cites United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Green, 354 F.3d at 679. In Knights, the U.S. Supreme Court considered whether the search of the home of a probationer was reasonable under the Fourth Amendment as a condition of his probation. Although the Knights court ultimately held that a "reasonable suspicion" of criminal activity was necessary for searching the probationer's home, the court also determined that a petitioner's status as a probationer necessarily affects the court's balancing test between the individual's privacy and the degree to which a program is needed for the promotion of legitimate governmental interests under the "totality of the circumstances" doctrine. The Knights court found that conditions of supervised release may be enforced without regard to whether they would be reasonable as applied to the general population. Knights, 534 U.S. at 119-21, 122 S.Ct. 587.
After Kincade was vacated, appellants cited the recent U.S. Supreme Court decision of Illinois v. Lidster, 540 U.S. 419, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004). Lidster addresses the constitutionality of a police roadblock set up to obtain information from motorists about a hit-and-run accident occurring about one week earlier at the same location and time of night that resulted in a drunken motorist being apprehended after he nearly hit an officer. Lidster, 540 U.S. at ___, 124 S.Ct. at 886. Lidster adds nothing to the analysis articulated by Edmond, and merely reasserts that when the primary law enforcement purpose for a seizure is not to determine whether occupants of a vehicle are committing a crime, the reasonableness of the seizure is determined by "`the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'" Lidster, 540 U.S. at ___, 124 S.Ct. at 887 (quoting Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). This standard comports with existing constitutional law on the "reasonableness" requirement of searches and seizures and does not add anything to the question of whether requiring incarcerated felons to submit DNA samples for a DNA database is reasonable or furthers a "special need."
We are more persuaded by the analysis contained in Green than by the vacated opinion in Kincade. Establishment of a DNA database for the purposes of identifying incarcerated felons and deterring recidivism appears to fall within the "special need" exception and is not primarily for the normal law enforcement purpose of prosecuting current crimes. Moreover, even if the "special needs" analyses contained in the Green and Olivas opinions might be analytically flawed, the same result obtains by the "totality of the circumstances" approach of Rise. See also, Olivas, 122 Wash.2d at 99-109, 856 P.2d 1076 (Utter, J., concurring) (opining that although "special need" exception was not properly applied, search nevertheless comported with Fourth Amendment under a different narrowly crafted exception  the minimally intrusive search exception). See also, Rise, 59 F.3d at 1562 (taking into account the multiple factors of reduced expectations of privacy held by convicted felons, minimal intrusiveness of blood drawing, and public's incontestable interest in deterring recidivism and identifying persons who commit crimes and the likelihood that a DNA databank will advance this interest, the Oregon DNA database statute is reasonable and therefore constitutional under the Fourth Amendment).
We believe that even if our state supreme court were to conclude, after Ferguson and Edmond, that the special need analysis contained in Olivas is analytically flawed, the court would conclude, as do we, that RCW 43.43.754 nevertheless is valid under the Fourth Amendment based on the reasoning of the concurring opinion in Olivas and the Ninth Circuit opinion in Rise. In the meantime, Olivas still binds this court, and is dispositive of this appeal.

II. RCW 43.43.754 and Article 1, Section 7

Citing State v. Lucas, 56 Wash.App. 236, 244, 783 P.2d 121 (1989) appellants Guzman-Gil and Bowman additionally argue that even though probationers have diminished privacy expectations, Article 1, section 7, of the Washington State Constitution requires *352 searches of their homes to be based on "well founded suspicions" of violations. Lucas involved the search of a probationer's home based on a "well founded suspicion" that he possessed cocaine. Lucas does not address the underlying question of whether the State may validly require an incarcerated individual to submit to DNA testing. Guzman-Gil and Bowman fail to show how this single distinguishable case elevates their claim beyond the requirements of the Fourth Amendment that a search and seizure be reasonable.
We affirm the trial court's sentencing requirements based on RCW 43.43.754 for the reasons set forth above.
BECKER, J., concurs.
BAKER, J., concurring.
I concur, because this court is bound by the decision of our Supreme Court in State v. Olivas.[1]
I note that the Wisconsin statute at issue in Green v. Berge[2] provides that if an individual's conviction or adjudication has been reversed, the state is required to purge its records and destroy all DNA samples from that person. Our own statute, RCW 43.43.754, contains no such provision. Whether it must, in order to be sufficiently narrowly drawn to pass constitutional muster, is an issue we do not decide.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[1] 122 Wash.2d 73, 856 P.2d 1076 (1993).
[2] 354 F.3d 675 (7th Cir.2004).