[No. 53074-7-I.   Division One.   February 28, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. BABIKER ABDEL-RAHIM BABIKER, *Appellant*.

*Corey M. Endo* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Patrick Preston, Deputy*, for respondent.

¶1 PER CURIAM — Babiker Abdel-Rahim Babiker challenges his conviction for vehicular assault, arguing that the trial court improperly admitted the results of his blood alcohol test. Additionally, Babiker argues that the prosecutor committed misconduct. We affirm the judgment and sentence because (1) the blood analyst followed the regulations for reporting test results, (2) Babiker did not preserve the issue of whether the proper preservative was used with the sample for appeal, and (3) the allegedly improper comments were in response to defense counsel's closing argument. Additionally, we hold that requiring Babiker to submit a DNA (deoxyribonucleic acid) sample under RCW 43.43.754 does not constitute an unconstitutional search.

## FACTS

¶2 The State charged Babiker with one count of vehicular assault contrary to RCW 46.61.522(1)(b). Before trial, Babiker moved to suppress the results of his blood test, arguing that the test did not comply with controlling regulations. The trial court denied Babiker's motion to suppress. A jury convicted Babiker of vehicular assault, and the trial court sentenced him within the standard range. Additionally, as a condition of his sentence, Babiker was ordered to submit a DNA sample.

## ANALYSIS

¶3 To support a conviction for vehicular assault, the State must prove that the defendant was under the influence of alcohol. RCW 46.61.522(1)(b). To prove intoxication, the State must show that the defendant's blood alcohol level was 0.08 within two hours after the accident or by submitting other evidence showing that the defendant was under the influence. RCW 46.61.522.

■ ■ ¶4 Babiker argues that the trial court erred in admitting blood test results because the State failed to show that the forensic toxicologist complied with WAC 448-14-020(1)(a). Under this regulation the blood testing

procedures should include "[d]uplicate analyses that should agree to within 0.01% blood alcohol deviation from the mean." WAC 448-14-020(1)(a)(iii). In the reporting section of this regulation, "[t]he results should be expressed as grams of alcohol per 100 ml of whole blood sample." WAC 448-14-020(2)(a). Additionally, "[t]he analysis results should be reported to two significant figures, using the mathematical rule of rounding." WAC 448-14-020(2)(b). Babiker argues that the percentage sign in this regulation is a mathematical term and requires the duplicate analyses to agree within 0.0001. This, however, is a strained reading of the regulation that would obtain absurd results. The state toxicologist has interpreted this regulation to mean 0.01 grams of alcohol per 100 milliliters of blood since the regulation was adopted. Even the defense expert, who testified that the percentage sign was a mathematical term, acknowledged that during his time as a supervisor for the state toxicologist, the regulation was interpreted in this fashion.

¶5 The regulations, when read as a whole, clearly show that the percentage sign is not meant as a mathematical term that would require additional precision. The regulations require test results to be reported to two significant figures after rounding. The instruments used by the state toxicologist report to three significant figures, which are then rounded to two significant figures for reporting. Requiring the duplicate analyses to agree within four significant figures is inconsistent with these procedures. Additionally, courts have used the percentage sign or term after 0.08 when discussing legal blood alcohol limits. *See, e.g., State v. McClendon*, 131 Wn.2d 853, 870, 935 P.2d 1334 (1997). The only reasonable interpretation of the regulation is that the duplicate analysis should agree within 0.01 grams of alcohol per one hundred milliliters of whole blood. Thus, the trial court properly admitted the evidence of Babiker's blood alcohol level.

■ ¶6 Babiker also argues that the trial court erred in admitting the results of the blood tests because the State

did not prove that the collection vial contained an enzyme to preserve the blood. Babiker did not object to the admission of the blood tests on this ground before the trial court. Therefore, we will not address this issue on appeal. *State v. Jones*, 71 Wn. App. 798, 820-21, 863 P.2d 85 (1993).

¶7 Babiker also argues that the prosecutor committed misconduct requiring reversal by impermissibly shifting the burden of proof to the defendant. Specifically, Babiker points to the prosecutor's arguments that there was no evidence supporting Babiker's argument that the victim injured himself after the accident and that the blood test results were flawed. A defendant arguing prosecutorial misconduct bears the burden of proving that the conduct was both improper and prejudicial. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). If the defendant fails to object to the alleged improper statements, the error is waived unless the comments are so flagrant and ill intentioned that the resulting prejudice could not be alleviated by a curative instruction. *Brown*, 132 Wn.2d at 561.

> Remarks of the prosecutor, even if they are improper, are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective.

*State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

¶8 At closing argument, defense counsel argued that the blood tests were flawed and that "under that fact pattern there had to have been a mistake. And it could be hundreds of things. That is the possibility here. And with that, that's reasonable doubt on [driving under the influence]. That's reasonable doubt." Report of Proceedings (RP) (Aug. 5, 2003) at 78. In her rebuttal, the prosecutor stated:

> So the second thing that counsel sort of argued about was whether or not the defendant was under the influence of alcohol. Well, there's no evidence. Zero evidence. Not on cross-examination. Not anything. There's zero evidence beyond any reasonable doubt that the alcohol test that was done by the

state toxicology lab was flawed. Zero.

RP (Aug. 5, 2003) at 85-86.

¶9  Additionally, Babiker's counsel questioned the cause of the victim's injury during closing argument: "Is it possible that [the victim], after exiting the vehicle, did not break his arm, walked around and collapsed on this own and break his arm then?" RP (Aug. 5, 2003) at 82. In response, the prosecutor argued:

> Okay. If you believe that [the victim] got out of that car, then was running around in pain screaming, and then somehow fell and broke his arm, even though the doctor testified that that injury is not consistent with just falling unless he's on a six-foot step ladder, well, there might be an argument there that his injury was not a proximate cause of the crash. But there's no evidence. Nothing. Zero. No evidence that his injury was not caused by this crash.

RP (Aug. 5, 2003) at 83-84. Babiker argues that these comments were improper because they shifted the burden onto him to show that he was innocent. These arguments, however, were in direct response to arguments made by defense counsel in closing argument. The arguments did not shift the burden of proof, but rather contend that defense theories were not supported by the evidence. Moreover, there is no evidence that these comments were prejudicial. Therefore, the prosecutor's comments were not improper and did not constitute misconduct.

¶10  Babiker also argues that RCW 43.43.754, which requires every person convicted of a felony to submit a DNA sample for creating a DNA database, violates his right under the Fourth Amendment to be free from unreasonable searches. This argument was rejected in, and is controlled by, our recent decision in *State v. Surge*, 122 Wn. App. 448, 94 P.3d 345 (2004).

¶11  For the foregoing reasons, the judgment and sentence are affirmed.