·· [752 NYS2d 305]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JIAN JING HUANG, Respondent.

First Department, December 24, 2002

### APPEARANCES OF COUNSEL

*Morrie I. Kleinbart* of counsel (*Mary C. Farrington* on the brief; *Robert M. Morgenthau, District Attorney*, New York County, attorney), for appellant.

*Daniel A. Warshawsky* of counsel (*Richard M. Greenberg, Office of the Appellate Defender,* attorney), for respondent.

## OPINION OF THE COURT

Rubin, J.

This Court is asked to vacate a plea on the ground that defense counsel made affirmative, material misrepresentations concerning defendant's immigration status, thereby rendering counsel's assistance ineffective. It is axiomatic that the ground advanced for vacating a negotiated plea must be an adverse consequence of entering into the negotiated plea agreement. As the federal detainer under which defendant remains in custody was issued prior to the entry of the plea and as there is no intimation that the detainer would have been vacated had defendant proceeded to trial, it is not merely a "collateral consequence" of the criminal proceedings (*see People v Ford*, 86 NY2d 397, 403); it is entirely unrelated to the disposition of the state prosecution. As it is not a *consequence* of actions taken in the course of state proceedings, it is completely beyond the control of the court system (*id.*) and immaterial to either the fairness of the plea agreement or the effectiveness of counsel's representation.

Defendant, who was convicted of kidnapping, was granted a new trial on appeal (248 AD2d 73, *lv denied* 93 NY2d 875), culminating in the entry of a negotiated plea on October 21, 1999. Prior to entering into the plea agreement, defendant was erroneously advised by counsel that there was no Immigration and Naturalization Service detainer outstanding against him (as confirmed to defense counsel by the prosecutor). Supreme Court then pronounced sentence, imposing 2 to 6 years with credit for time served. As a result, defendant was subject to immediate release, having been incarcerated since his arrest on April 25, 1992, a period of 7½ years. While the Department of Correction was processing defendant's release papers, it was learned that the Immigration and Naturalization Service had lodged a detainer against defendant on June 29, 1999.

Defendant moved to vacate his plea (CPL 440.10 [1] [b], [h]) on the ground that he had agreed to plead guilty under a misapprehension of his immigration status. However, at the time defendant made this motion, judgment had not yet been entered on the sentence, rendering CPL 440.10 inapplicable by its terms. Thereafter, defendant moved to vacate his plea pursuant to CPL 220.60.

While CPL 220.60 only permits a motion to be interposed prior to the imposition of sentence, Supreme Court declined to

consign defendant to what it deemed to be a procedural void. The court held that "imposition of sentence" should be construed to include both the pronouncement of sentence and its subsequent incorporation into the judgment of conviction. However, the court's precise basis for granting defendant's motion to vacate his plea remains elusive. For the purposes of CPL 220.60, the court held that "defendant was personally defrauded" and, for the purposes of CPL 440.10, that counsel's representation had been both "grossly ineffective" in misrepresenting a material fact to defendant and, alternatively, that judgment should be vacated in the interest of justice.

The People contend, as they did on the motion, that relief pursuant to CPL 440.10 is unavailable because the court had not yet entered a judgment of conviction and, in any event, because Supreme Court lacks authority to grant such relief in the interest of justice (*People v Reyati*, 254 AD2d 199, 200, *lv denied* 93 NY2d 856 [relief limited to ground specified in CPL 440.10 (1)]; *see also People v Agero*, 234 AD2d 94 [no authority to grant relief on general equitable grounds]). In addition, they argue that the discretion to vacate a guilty plea pursuant to CPL 220.60 (3) is unavailable because that provision specifically contemplates a motion made "[a]t any time before the imposition of sentence," and not, as Supreme Court construed it, before the entry of judgment.

On appeal, defendant does not attempt to identify a particular statutory basis for the requested relief beyond the assertion that it is an "illogical, strained, and unfair interpretation of the law" to require a defendant to compel entry of judgment and pursue his postjudgment remedies pursuant to CPL 440.10. Defendant does not maintain, as an alternative ground for relief, that Supreme Court acted to correct a clerical error where "the corrections made after sentencing not only were evident from the record but also fully comported with the expectation of the court, the prosecutor and the defendant at the time sentence was imposed" (*Matter of Campbell v Pesce*, 60 NY2d 165, 169, citing *People v Minaya*, 54 NY2d 360, *cert denied* 455 US 1024; *People v Wright*, 56 NY2d 613). Defendant merely intimates that Supreme Court's ruling can be justified on the ground that it vacated a judgment obtained by fraud or misrepresentation (*see Matter of Lockett v Juviler*, 65 NY2d 182, 186-187). On appeal, he contends that we "should affirm the lower court's refusal to enforce a bargain predicated upon a material misrepresentation."

The record contains nothing to impugn the good faith of either the prosecutor or defense counsel in conveying informa-

tion to defendant concerning his immigration status. More significantly, the record does not reflect how defendant's unawareness of the detainer lodged by the Immigration and Naturalization Service affected his expectations with respect to deportation. In particular, defendant has failed to demonstrate that the detainer made any substantive difference to his circumstances at the time he entered his plea so as to render counsel's representation less than effective. In short, while defendant has established a misrepresentation, albeit inadvertent, he has failed to show that it is material to the interposition of his guilty plea.

As stated in *People v Ford* (86 NY2d at 402-403), "A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences (*People v Harris*, 61 NY2d 9, 19; *Boykin v Alabama*, 395 US 238, 244)." The Court continued (at 403), "Deportation is a collateral consequence of conviction because it is a result peculiar to the individual's personal circumstances and one not within the control of the court system." It concluded (at 403) that, as a general rule, it is unnecessary for the court to inform a defendant of the potential for deportation before accepting a guilty plea, and counsel's failure to so advise a client does not constitute ineffective representation (at 404).

Defendant urges this Court to adopt the position taken by some federal courts that, under appropriate circumstances, affirmative misstatements by defense counsel as to a client's immigration status may comprise ineffective assistance, a question not before the Court of Appeals in *Ford* and therefore not considered (*id.* at 405). However, defendant consistently maintains that "a material fact was directly misrepresented by defense counsel" and brings no case to this Court's attention in which a negotiated plea has been vacated where its entry had absolutely no effect on the defendant's immigration status (*cf. United States v Khalaf*, 116 F Supp 2d 210, 215-216 [D Mass] [plea entered on erroneous advice that defendant would not be deported]; *United States v Corona-Maldonado*, 46 F Supp 2d 1171, 1173 [D Kan] [same]; *People v Correa*, 124 Ill App 3d 668, 465 NE2d 507, *affd* 108 Ill 2d 541, 485 NE2d 307 [same]). In a case where the affirmative misrepresentation *was* material insofar as the guilty plea exposed the defendant to deportation, the 11th Circuit Court of Appeals nevertheless declined to hold that counsel's assistance was ineffective, instead directing a hearing as to the informed nature of the plea based upon the

defendant's colorable claim of innocence (*Downs-Morgan v United States*, 765 F2d 1534, 1541 [attorney misinformed defendant that guilty plea would not result in deportation]). In this connection, the court noted that the necessity to obtain a guilty plea " 'made intelligently and voluntarily * * * is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing' " (*id.* at 1538-1539, quoting *McMann v Richardson*, 397 US 759, 770).

The instant matter is clearly distinguishable from the cases relied upon by defendant. Defendant was subject to the Immigration and Naturalization Service detainer before he entered his plea of guilty and would have remained subject to the detainer had he not entered into the negotiated plea agreement. The record discloses nothing concerning the grounds for lodging the detainer and, given its timing, it seems to have a basis that is completely independent of the criminal charges pending against defendant. In any event, defendant has not argued, much less established, that entry of the plea had any adverse effect on his immigration status. Thus, he has failed to substantiate his argument that the concededly affirmative misrepresentations of his attorney are *material* so as to implicate the constitutional guarantee of meaningful representation by counsel.

The dissenter takes the position that because defendant was counting on immediate release as the outcome of plea negotiations, the independent federal basis for his continued detention is ipso facto "material" and renders the waiver of his right to a trial less than "knowing and voluntary" (*Boykin*, 395 US at 244). Defendant, however, does not maintain that his plea was involuntary or unintelligent; only that it was obtained by means of a material misrepresentation of the facts. Furthermore, this view suggests that the courts of this state are somehow responsible for defendant's continued incarceration, his potential deportation and the dire consequences that might ensue should defendant be returned to his native China. However, these are all matters within the exclusive jurisdiction of the Immigration and Naturalization Service and beyond the control of our courts. First, even if defendant were permitted to vacate his plea, he would still remain in custody under the detainer. Second, whether defendant should be deported, and the particular considerations to be weighed in support or mitigation, will be determined in proceedings before the federal agency. To the extent that defendant's conviction, upon his

plea of guilty, might be material to its decision, we note that the felony conviction was no less significant at the time defendant entered into the plea agreement as a factor subjecting him to deportation. Finally, as to matters that are within the control of the courts, defendant received exactly what he bargained for—the disposition of violent felony charges without subjecting himself to further incarceration.

It is apparent that defendant received meaningful representation to the extent that his attorney was successful in reducing a potential sentence of 15 years to life to an effective sentence of time served (*Ford*, 86 NY2d at 404; *see also People v Lantigua*, 289 AD2d 21). It is equally apparent that defendant harbored no illusions concerning the potential for his deportation (*cf. People v McDonald*, 296 AD2d 13); his only concern related to the immediacy of being taken into custody by the Immigration and Naturalization Service. Significantly, defendant does not allege that he was unaware that conviction for a felony offense, whether as the result of a trial or the entry of a guilty plea, would subject him to deportation. The record reveals that defendant's two accomplices served time for their part in the kidnapping, and defendant stops far short of contending that it is unfair to hold him to the plea agreement because he would have been able to establish his innocence at trial.* Therefore, defendant makes no claim under the Federal Constitution that he was induced to plead guilty by the erroneous advice of counsel (*see Ford* at 405). Rather, the extent of the detriment identified by defendant is that "it is arguably far easier to fight deportation, or seek asylum, 'on the outside, with the benefit of friends and family helping him'" (quoting Supreme Court's decision). In the absence of a detainer, defendant also points to "the possibility that he would never come to the attention of the INS."

That defendant would have preferred to contest deportation while at liberty or to elude detection by the immigration authorities altogether does not detract from the capable representation afforded by his attorney. For the purposes of the state guarantee of effective assistance of counsel, defendant has not established any prejudice as a consequence of the negotiated plea agreement (*People v Benevento*, 91 NY2d 708, 713-714 [prejudice is examined generally and is relevant but

---

* In view of defendant's guilty plea, the dissenter's contention that this Court has somehow "turn[ed] the presumption of innocence and applicable burdens of proof on their heads" is difficult to fathom. It remains that defendant has asserted no colorable claim of innocence.

not dispositive]). There is no adverse impact on "the fairness of the process as a whole" that would warrant vacating the plea (*id.* at 714 [harmless error doctrine inapplicable "in cases involving substantiated claims of ineffective assistance"]), only the collateral consequence that defendant came into the custody of the Immigration and Naturalization Service sooner rather than later. For the purposes of relief pursuant to the Sixth Amendment, the disadvantages of detention do not constitute the requisite prejudice that must result from a deficiency in the performance of counsel (*Strickland v Washington*, 466 US 668, 687). Finally, defendant has obtained a very favorable disposition given the gravity of the felony charges against him.

In sum, defendant has identified no statutory basis for the motion to vacate his guilty plea. Given the lack of merit to defendant's application on either federal or state constitutional grounds, it is unnecessary to fashion a procedural remedy to afford relief.

Accordingly, the order of the Supreme Court, New York County (James Yates, J.), entered on or about February 23, 2000, which granted defendant's motion to withdraw his plea or, in the alternative, to vacate a judgment rendered upon that plea, should be reversed, on the law, and the motion denied.

ROSENBERGER, J. (dissenting). In 1992, defendant and two other individuals were indicted on a charge of kidnapping in the first degree. A June 1993 trial resulted in defendant's conviction, and on July 21, 1993, defendant was sentenced to an indeterminate sentence of 15 years to life, a sentence he began serving while appealing the conviction. In a unanimous decision, dated December 8, 1998, this Court reversed the judgment of conviction on the grounds that the prosecution had improperly introduced previously suppressed testimony and physical evidence at trial (*see People v Jian Jing Huang*, 248 AD2d 73, 77, *lv denied* 93 NY2d 875). The case was remanded for a new trial, and the defense and prosecution entered into plea negotiations.

Of crucial importance to defendant, an immigrant from China, was that a guilty plea not result in or in any way increase the likelihood of his being deported to China, where he feared he would be subject to arrest, torture or even death as a result of his defection to the United States, his conversion to Christianity, and his political beliefs. Accordingly, defendant insisted that he would not plead guilty if (a) an Immigration

and Naturalization Service (INS) immigration detainer had already been lodged against him; (b) the circumstances of his plea would result in a detainer being lodged against him; or (c) if a plea would result in his being released to the custody of the INS. These conditions led the prosecution and defense counsel to an agreement that would permit defendant to plead guilty to second degree kidnapping, receive a sentence equivalent to the time already served, and be immediately released into the community the day he entered his plea. This agreement was based on there being no INS detainer lodged against defendant when he entered his plea and the prosecution's agreement that it would make no efforts to have the INS place a detainer on defendant prior to his release. The prosecution confirmed to defense counsel that, as far as it knew, no INS detainer was pending against defendant.

On October 21, 1999, defense counsel presented the proposed plea agreement to defendant. Based on the representations of his counsel that there was no INS detainer pending against him, and in conformance with the plea agreement, defendant entered a guilty plea to a charge of second degree kidnapping on October 21, 1999. Immediately after accepting his plea, Supreme Court announced, in conformance with the plea agreement, that defendant's sentence would be 2 to 6 years and that, because the sentence was less than the time defendant had already served, he would be released that day.

Within an hour of defendant's entry of his plea and the court's pronouncement of sentence, while his release papers were being processed, it was discovered that, contrary to defense counsel's assurances, the INS had lodged a detainer against defendant, about four months earlier, on June 29, 1999. Defense counsel immediately returned to court and orally moved to withdraw defendant's plea and restore the indictment. Supreme Court stayed execution of the sentence and suspended entry of judgment to give defendant time to file a written motion and the prosecution time to respond.

Defendant moved to withdraw his plea and reinstate the indictment pursuant to CPL 220.60 (3) or, in the alternative, to vacate his plea pursuant to CPL 440.10. In ruling on the motions, Supreme Court specifically found that the existence of an INS detainer was

> "a matter of critical importance to the defendant, not one that was neglected or overlooked by the parties * * * [D]efendant actively sought advice on

whether or not he would be turned over for deportation immediately or if he would be released and able to make his application for asylum on the outside, with the benefit of friends and family helping him. The defendant was induced wrongfully by counsel into relying upon a representation that there was no hold [detainer] * * * And * * * that it was material misinformation * * * that had he known the true situation and had it not been affirmatively misrepresented to him, he would not have entered into the plea."

Stating that it could not "be a party to continuing * * * the bargain that rested upon a fraud," Supreme Court rejected the prosecution's contentions that defendant's CPL 220.60 motion was too late because it was made after sentence was "imposed" and his CPL 440.10 motion was too early because it was made before judgment had been entered. The court granted both of defendant's alternative motions. This appeal by the People followed.

CPL 220.60 (3) provides that "the court *in its discretion* may permit a defendant who has entered a plea of guilty * * * to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored" (emphasis added). Thus, the decision whether to permit a defendant to withdraw a guilty plea rests solely within the court's discretion (*see* CPL 220.60 [3]; *People v Walker*, 266 AD2d 727, *lv denied* 96 NY2d 909; *People v Cance*, 155 AD2d 764, 764-765; *People v Kelsch*, 96 AD2d 677).

Allowing a defendant to withdraw a plea in the face of evidence that it was induced by mistake or fraud is plainly within the court's discretion (*see People v Cance, supra*, 155 AD2d at 764-765; *People v Randolph*, 78 AD2d 566; *People v Robertson*, 255 AD2d 968, *lv denied* 92 NY2d 1053). Supreme Court's findings, supported by the record, that defendant was misled into believing that no INS detainer was pending against him and that such representation was of such crucial importance that he would not have entered into the plea agreement if he had known the truth are not challenged by the prosecution. The erroneous representation, affirmatively made to defendant by defense counsel, was of such significance that it precluded defendant's plea from being voluntary and knowing, two prerequisites for a constitutionally valid plea (*North Carolina*

*v Alford*, 400 US 25, 31; *People v Ford*, 86 NY2d 397, 403).\* Permitting withdrawal of a plea in such circumstances is clearly well within the trial court's discretion. The prosecution does not argue otherwise.

Instead, the prosecution argues that defendant's motion was untimely since it was made after the court pronounced sentence. CPL 220.60 (3) provides in relevant part that a court may permit a defendant to withdraw his plea "[a]t any time *before the imposition of sentence * * *.*" (emphasis added). According to the prosecution, sentence is "imposed" when the trial judge pronounces it in open court, which, in this case, occurred on the morning of October 21, 1999, directly after defendant entered his guilty plea. Defendant counters that sentence is not "imposed," at least for CPL 220.60 purposes, until it has been entered by the clerk of the court. This dispute arises because the normal chronology of events, which includes a period of time between entry of a plea and pronouncement of sentence, during which most CPL 220.60 motions are made, was compressed in this case, with the plea and pronouncement of sentence occurring virtually simultaneously.

The term "imposition of sentence" is not defined anywhere in the Criminal Procedure Law. Neither of the parties has cited any case construing the phrase, nor has the Court found any controlling authority. However, certain principles of statutory construction guide our determination that Supreme Court correctly ruled that the phrase "before the imposition of sentence" in CPL 220.60 (3) should be construed to include the period from entry of a plea until judgment—which consists of the conviction (by verdict or plea) and the sentence (CPL 1.20 [15])—is entered in the court records by the clerk of the court.

First, adopting this construction permits CPL 220.60 to be harmonized with CPL 440.10, which provides a procedural vehicle for vacating a plea *after* entry of judgment (*see Matter of*

---

\* The majority's assertion that, "while defendant has established a misrepresentation * * * he has failed to show that it is material to the interposition of his guilty plea," ignores the trial court's finding that accurate information as to defendant's immigration status was central to his willingness to enter a plea. Whether the majority views the misinformation provided to defendant as material is wholly irrelevant to whether defendant's plea was knowing and voluntary—which it plainly was not given the erroneous information upon which it was based.

The majority's additional assertion that "defendant stops far short of contending that * * * he would have been able to establish his innocence at trial," turns the presumption of innocence and applicable burdens of proof on their heads.

*Dutchess County Dept. of Social Servs. v Day*, 96 NY2d 149, 153). Second, such interpretation avoids the creation of what the trial court characterized as a procedural time gap during which there would be no mechanism for voiding improperly obtained pleas in unusual cases, such as this one. While such a gap is likely to occur only in peculiar circumstances, and thus ensnare few defendants, this case is evidence enough that such circumstances can and will arise. The rule should not be construed in such a way as to deny the right to withdraw a plea to those few defendants who, for reasons that may have nothing to do with them, might find themselves in the procedural limbo that would result if the prosecution's interpretation were given effect. Absent evidence that the Legislature intended otherwise, we believe the statute should be interpreted to avoid such a procedural gap (*see e.g. Matter of Home Off. Reference Lab. v Axelrod,* 127 Misc 2d 444, 446 [statutes should not be construed in such a way as conflicts with common sense and reason]). Based on this interpretation, defendant's CPL 220.60 (3) motion was timely made, and, as previously discussed, well within the trial court's discretion to grant.

The trial court's grant of defendant's alternative motion to vacate the plea under CPL 440.10 (1), however, was erroneous. That provision permits a court to vacate a judgment based upon specified grounds, including the ground that it was "obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]). However, by its terms, CPL 440.10 (1) applies only after judgment has been entered, which the parties agree has not yet occurred.

For the foregoing reasons, the Supreme Court's order should be affirmed to the extent it granted defendant's CPL 220.60 motion to withdraw his plea.

TOM, J.P., and SULLIVAN, J., concur with RUBIN, J.; ROSENBERGER and ELLERIN, JJ., dissent in a separate opinion by ROSENBERGER, J.

Order, Supreme Court, New York County, entered on or about February 23, 2000, reversed, on the law, and defendant's motion to withdraw his plea or, in the alternative, to vacate a judgment rendered upon that plea denied.