104 P.3d 11 (2004)
STATE of Washington, Respondent,
v.
Adrian Martel DAVIS, Appellant.
No. 53043-7-1.
Court of Appeals of Washington, Division 1.
December 13, 2004.
Publication Ordered January 5, 2005.
David Koch, Nielsen Broman & Koch, Seattle, WA, for Appellant.
Carla Carlstrom, Senior Deputy Prosecuting Attorney, Seattle, WA, for Respondent.
PER CURIAM.
Adrian Davis pleaded guilty to one count of delivery of cocaine. After the trial court pronounced a sentence of 47 months confinement, Davis moved to withdraw his guilty plea. The trial court refused to consider the merits of Davis's motion, concluding that judgment had occurred, and CrR 4.2(f) constituted a procedural bar. Davis appeals the *12 trial court's refusal to consider his motion to withdraw his guilty plea. He also appeals the order compelling a DNA sample pursuant to RCW 43.43.754. Because judgment does not occur under CrR 4.2(f) until the written judgment and sentence are filed, we remand for consideration of Davis's motion to withdraw his guilty plea. We also hold that Davis's constitutional right to privacy was not violated by the compelled DNA sample.

I.
Adrian Davis was charged with one count of delivery of cocaine. The trial court held a competency hearing and found that Davis was capable of understanding the nature of the proceedings and competent to stand trial. Davis pleaded guilty to one count of delivery of cocaine before the matter went to trial. The court scheduled sentencing on June 6, 2003.
During the sentencing hearing, the court announced it would impose a 47-month jail sentence. But Davis refused to sign the notification of ineligibility for firearms and would not fingerprint the judgment and sentence, so the court ordered that sentencing continue on a later date. Davis then asked, "[d]idn't I just get sentenced?" to which the court replied, "[n]o, not done with sentencing until you give your fingerprints." Davis again refused to sign or provide his fingerprints at the second hearing.
Davis was before the court a third time in early July, at which time he indicated that he wanted to withdraw his guilty plea pursuant to CrR 4.2(f). Davis was apparently standing in the back of the courtroom, however, and would not approach the bench. He said he did not want to approach the bench because he did not want "to give jurisdiction over [him]self." The court equated Davis's actions to a nonappearance and deferred the matter until July 10. Before doing so, the court noted that Davis had been sentenced and it would compel production of his fingerprints by order if he did not offer them willingly.
On July 10, Davis reiterated his motion to withdraw his guilty plea, claiming that his attorney had coerced him and that he was under duress when he entered the plea. His attorney requested to withdraw because Davis's motion involved a claim of ineffective assistance of counsel. The court responded: "We're not at the point where Mr. Davis can make that motion. He has been sentenced. If he wants to make a motion to set aside the judgment pursuant to criminal rule 7.8 he can do that but [not] until he gets his fingerprints on the judgment and sentence  that's the only reason we're here today...." Davis refused to fingerprint the judgment.
The following week, Davis was again before the court to finalize the judgment and sentence. His attorney explained Davis's opposition to the fingerprinting. Davis apparently believed that under the Uniform Commercial Code, his name and image were his property and therefore the court had no jurisdiction over him unless he offered them freely. Davis recognized the court's power to compel his fingerprints, but thought by not volunteering them that he was preserving his legal argument for appeal.
An order compelling Davis's fingerprints was entered on July 25, and the judgment and sentence was filed on August 5.

II.
Davis makes three arguments on appeal. First, he argues that the trial court erred by refusing to hear his motion to withdraw his guilty plea. He claims that the court was required to consider the motion because judgment had not yet occurred under CrR 4.2(f). He argues that judgment occurs when the judgment and sentence are signed and entered with the clerk. The State responds that the trial court correctly declined to rule on the merits of Davis's motion because judgment occurred when the court pronounced Davis's sentence. Davis's second argument is a corollary of his first. He claims that the court deprived him of his right to counsel by precluding his CrR 4.2(f) motion because there is no post-judgment right to counsel on a CrR 7.8 motion. Third, Davis argues that a compelled DNA sample violated his Fourth Amendment right to privacy. He argues that RCW 43.43.754(1) is per se unconstitutional. Alternatively, Davis claims that cheek swabbing is not a lawful means of *13 acquiring DNA under RCW 43.43.754(1) because the rules implementing the statute only permit blood sampling. Davis also submitted a statement of additional grounds for review, but he did not raise other meritorious grounds for relief from judgment.

A. Whether the Court Erred By Not Addressing the Merits of Davis's Motion to Withdraw His Guilty Plea
CrR 4.2 protects criminal defendants by mandating that guilty pleas be entered into voluntarily and requiring the trial court to ensure that pleas are supported by facts. CrR 4.2(f) provides for motions to withdraw guilty pleas prior to judgment. It requires the court to allow a defendant to withdraw a plea to correct a manifest injustice. If a motion for withdrawal is made after "judgment," however, it is governed by CrR 7.8.[1]
CrR 7.8 provides procedures for requesting relief from final judgment. A post-judgment request to withdraw a guilty plea is a collateral attack on the judgment.[2] Under CrR 7.8, judgment means either: "(a) The date it is filed with the clerk of the trial court; (b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or (c) The date that the United States Supreme Court denies a timely petition for certiorari...."[3] Defendants have up to one year after judgment to bring a CrR 7.8 motion.[4] The motion must be in writing and supported by affidavits stating precise facts or errors.[5] In contrast, a motion to withdraw a guilty plea under CrR 4.2(f) requires only that the defendant make a motion, oral or written, before judgment.[6]
A defendant is entitled to counsel at all critical stages of a criminal prosecution, which includes a motion under CrR 4.2(f) to withdraw a guilty plea.[7] Under CrR 7.8, a defendant is only entitled to counsel if the motion is appealed directly to this court as a personal restraint petition.[8] If Davis had filed a motion under CrR 7.8 with the superior court, he would not have been entitled to counsel.[9]
The controlling issue on Davis's appeal is the meaning of "judgment" under CrR 4.2. If, as the State argues, judgment occurs when the sentence is pronounced, then the trial court correctly refused to consider Davis's motion and did not act arbitrarily in refusing to consider the motion. If judgment occurs when the sentence is signed and filed with the clerk, then the trial court erred by not considering the merits of Davis's motion to withdraw his guilty plea.
Although the precise meaning of judgment under CrR 4.2 has not been decided, Washington courts have considered whether oral pronouncements of sentences are final in other contexts.[10] In State v. Hampton,[11] the *14 Washington Supreme Court considered whether an oral pronouncement of sentence serves to exonerate a bail bond. The court held that an oral pronouncement was not conclusive or final.[12] Likewise, in State ex rel. Echtle v. Card,[13] the court rejected an argument that an oral pronouncement was binding.[14] In Card, the defendants pleaded guilty and the trial court announced that it would enter 5-to-15-year jail sentences, which would immediately be suspended and remain suspended during good behavior.[15] Several weeks later, the court's attention was drawn to evidence that exhibited the seriousness of the crimes, and it decided not to suspend the sentences.[16] On appeal, the defendants argued that the oral pronouncement of suspended sentences was final and binding. The Washington Supreme Court held that "the so-called oral decisions or judgments and orders of suspension at the first hearing were ineffective," noting that it had "often, and uniformly, held that decisions of the court required to be in writing are not controlled by prior oral statements of the court."[17]
In People v. Huang,[18] a New York court was presented with an issue akin to the one before us. Huang involved a Chinese defendant who pleaded guilty to kidnapping after his attorney erroneously advised him that there was no Immigration and Naturalization detainer outstanding against him.[19] The trial court pronounced a sentence of two to six years, with credit for time served, which meant the defendant was subject to immediate release. While his release papers were being processed, the defendant learned that there was a detainer against him and immediately moved to vacate his plea.[20] He had agreed to the plea based on the impression that he would not be turned over for deportation immediately, but rather would have time to prepare an application for asylum while outside of jail.[21] At first, Huang moved to vacate judgment under New York Criminal Procedure Law (CPL) 440.10, which is the equivalent of CrR 7.8. But because judgment had not been formally entered, he then moved to withdraw his guilty plea under CPL 220.60(3), which is its version of CrR 4.2.[22] The trial court covered both bases and held that the guilty plea should be withdrawn under CPL 220.60(3) because of ineffective assistance of counsel, and alternatively, under CPL 440.10 because Huang was defrauded.[23] The majority of the appellate court did not decide the appropriate procedural avenue for the defendant's motion. It refrained from addressing the issue and reversed the trial court's holding after concluding that the defendant had identified no statutory basis for the motion to vacate his plea.[24] But a *15 dissenting judge offered a persuasive opinion as to why CPL 220.60(3) should be construed as permitting the court to withdraw a guilty plea up until final judgment:
[C]ertain principles of statutory construction guide our determination that Supreme Court correctly ruled that the phrase "before the imposition of sentence" in CPL 220.60 should be construed to include the period from entry of a plea until judgment  which consists of the conviction (by verdict or plea) and the sentence (CPL 1.20[15])  is entered in the court records by the Clerk of the Court.
First, adopting this construction permits CPL 220.60 to be harmonized with CPL 440.10, which provides a procedural vehicle for vacating a plea after entry of judgment. Second, such interpretation avoids the creation of what the trial court characterized as a procedural time gap during which there would be no mechanism for voiding improperly obtained pleas in unusual cases, such as this one. While such a gap is likely to occur only in peculiar circumstances, and thus ensnare few defendants, this case is evidence enough that such circumstances can and will arise. The rule should not be construed in such a way as to deny the right to withdraw a plea to those few defendants who, for reasons that may have nothing to do with them, might find themselves in the procedural limbo that would result if the prosecution's interpretation were given effect. Absent evidence that the Legislature intended otherwise, we believe the statute should be interpreted to avoid such a procedural gap. Based on this interpretation, defendant's CPL 220.60(3) motion was timely made, and, as previously discussed, well within the trial court's discretion to grant.[[25]]
This reasoning is persuasive under Washington law as well.[26] Under CrR 7.8, judgment occurs after the trial court proceeding when the conviction and sentence are filed with the court clerk.[27] For purposes of consistency, judgment should be defined the same under CrR 4.2. To hold otherwise would result in a procedural time gap. If judgment occurs for purposes of CrR 4.2 when sentence is pronounced, but occurs for purposes of CrR 7.8 only after judgment is formally entered with the clerk, then defendants who wish to withdraw their guilty pleas due to manifest injustice would be left without recourse for a period of time. To define judgment differently under CrR 4.2 would be both inconsistent and, in some circumstances, unjust.
The State argues that "[t]o allow a defendant to move to withdraw a guilty plea under CrR 4.2(f) every time he was unhappy with the sentence pronounced by the judge would needlessly take up trial courts' time with frivolous motions." But this judicial efficiency argument must fail because more time and paperwork are required when the merits of a motion are deferred to a post-judgment proceeding. Additionally, a trial court is not required to waste valuable court time on frivolous or unjustified CrR 4.2 motions. A written statement on plea of guilty in compliance with CrR 4.2(g) provides prima facie verification of its constitutionality, and when the written plea is supported by a court's oral inquiry on the record, "the presumption of voluntariness is well nigh irrefutable."[28]
Concluding that "judgment" under CrR 4.2(f) means the date the judgment and sentence are filed with the clerk, we hold that the trial court erred by not considering the merits of Davis's motion to withdraw his guilty plea. Because the determination of whether Davis's plea of guilty was voluntary and intelligent is a question of fact "peculiarly within the province of the trial court,"[29] *16 we must remand the issue.[30] Davis is entitled to representation by counsel on this motion because it is an essential stage of his prosecution.[31]

B. Whether a DNA Sample Was Lawfully Compelled
Davis makes two arguments in support of his claim that the compelled DNA sample was unlawful. First, he urges this court to set aside the Washington Supreme Court's holding in State v. Olivas,[32] and hold that collecting DNA samples from felony offenders does not fulfill a special need outside of ordinary law enforcement. Alternatively, Davis argues that, even if DNA samples are lawful, cheek swabbing is not authorized under RCW 43.43.754(1) and is an inappropriate means of gathering DNA. Neither argument has merit.
In Olivas, the Washington Supreme Court held that an earlier version of RCW 43.43.754 was constitutional because it served a compelling special need beyond the purpose of ordinary law enforcement.[33] In State v. Surge,[34] we recently readdressed whether RCW 43.43.754 is constitutional and reinforced the holding in Olivas.[35] We explained that the purposes of compelling DNA samples  to identify incarcerated felons and deter recidivism  are special needs that go beyond law enforcement.[36] We also held that RCW 43.43.754(1) is constitutional based on the totality of the circumstances: the State has a compelling interest in a DNA databank, the means of collecting DNA samples are minimally intrusive, and convicted felons have no reasonable expectation of privacy in identifying markers.[37]
Davis also argues that cheek swabbing is not an authorized method of collecting DNA because the regulation implementing RCW 43.43.754 specifically requires blood samples.[38] We rejected this argument in State v. S.S.[39] Although WAC 446-75-060 specifies procedures for blood collection, it does not expressly limit sampling to this method. Further, the Legislature amended RCW 43.43.754 in 2002 and changed the term "blood sample" to "biological sample," thus indicating that blood sampling is not the sole means of DNA extraction under the statute.[40] We hold that RCW 43.43.754 is constitutional and cheek swabbing is a lawful means of collecting DNA samples under the statute.

C. Statement of Additional Grounds for Review
Davis's additional arguments must be rejected. First, Davis claims the guilty plea *17 was incorrectly dated as August 28, 2002. To the contrary, the plea is dated May 22, 2003, and the date Davis refers to is the date he committed the crime. Second, Davis claims the guilty plea reflects that he was only supposed to receive a 9-to-12-month sentence. Again, he has incorrectly read the plea. It states that the standard range for his crime is 41 to 54 months, with 9 to 12 months of community confinement. Third, Davis claims he never signed the guilty plea. However, the plea has a signature on it and the transcript of the hearing indicates that he entered the plea. Finally, Davis submitted documents indicating that he has copyrighted his name. He also warned that any unauthorized use of his name during this appeal would result in a $500,000 fee.[41] These documents appear to support his belief that the superior court did not have personal jurisdiction over him because he did not volunteer his name and identity to the court. This legal argument has no merit, and must also be dismissed.
The case is remanded to the superior court for a decision on the merits of Davis's CrR 4.2(f) motion to withdraw his guilty plea.
NOTES
[1] CrR 4.2(f); State v. Boyd, 109 Wash.App. 244, 249, 34 P.3d 912, rev. denied, 146 Wash.2d 1012, 51 P.3d 86 (2002).
[2] RCW 10.73.090(2).
[3] RCW 10.73.090(3).
[4] RCW 10.73.090(1); CrR 7.8.
[5] CrR 7.8(c)(1).
[6] See CrR 4.2 (not setting forth specific procedures for making the motion). The State concedes this point. ("Unlike CrR 4.2(f) motions to withdraw, which can be done orally, CrR 7.8 motions to set aside a judgment must be done in writing supported by affidavits.").
[7] State v. Harell, 80 Wash.App. 802, 804, 911 P.2d 1034 (1996).
[8] State v. Winston, 105 Wash.App. 318, 323-24, 19 P.3d 495 (2001). RCW 10.73.150 provides counsel during any appeal as a matter of right or in response to a collateral attack filed by the State, but not for a collateral attack initiated by the defendant. RCW 10.73.150(1), (5).
[9] Winston, 105 Wash.App. at 324, 19 P.3d 495. "The statute thereby creates an incentive to file a collateral attack in the Court of Appeals instead of in the trial court. Centralizing the screening of collateral attack motions in the Court of Appeals promotes economy and uniformity in the distribution of resources for the appointment of counsel in postconviction proceedings." Winston, 105 Wash.App. at 324, 19 P.3d 495. When a rule 7.8 motion is filed with the trial court, it may transfer the motion to this court if the transfer serves the ends of justice. CrR 7.8(c)(2); Winston, 105 Wash.App. at 324, 19 P.3d 495.
[10] Division Three has implied that "judgment" under CrR 4.2(f) means formal judgment. It noted that a motion to withdraw a plea "would be governed by CrR 7.8 if filed after entry of judgment." Boyd, 109 Wash.App. at 249, 34 P.3d 912 (citing CrR 4.2) (emphasis added).
[11] 107 Wash.2d 403, 728 P.2d 1049 (1986).
[12] Hampton, 107 Wash.2d at 406, 728 P.2d 1049.
[13] 148 Wash. 270, 268 P. 869 (1928).
[14] Card, 148 Wash. at 271, 268 P. 869.
[15] Card, 148 Wash. at 272, 268 P. 869.
[16] Card, 148 Wash. at 272, 268 P. 869.
[17] Card, 148 Wash. at 273-74, 268 P. 869.
[18] 302 A.D.2d 90, 752 N.Y.S.2d 305 (2002), overruled by People v. Huang, 1 N.Y.3d 532, 770 N.Y.S.2d 685, 802 N.E.2d 1083, (2003).
[19] Huang, 752 N.Y.S.2d at 306.
[20] Huang, 752 N.Y.S.2d at 306.
[21] Huang, 752 N.Y.S.2d at 310. (Rossenberger, J. dissenting).
[22] Huang, 752 N.Y.S.2d at 306. New York CPL 220.60(3) provides: "At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored." N.Y.Crim. Proc. Law § 220.60.
[23] Huang, 752 N.Y.S.2d at 306.
[24] Huang, 752 N.Y.S.2d at 309. New York's highest court reversed the appellate court's holding after concluding it did not have jurisdiction to hear the appeal. Under CPL 220.60(3), a trial court has complete discretion whether to grant a motion to withdraw a guilty plea. Additionally, both parties stipulated that judgment had not occurred, so the trial court's application of CPL 440.10 had no effect. The court did not decide the procedural issue. People v. Huang, 1 N.Y.3d 532, 533-34, 770 N.Y.S.2d 685, 802 N.E.2d 1083 (2003).
[25] Huang, 752 N.Y.S.2d at 312 (Rossenberger, J. dissenting) (citations omitted).
[26] In fact, this reasoning is even more compelling in Washington because CrR 4.2(f) indicates it will apply up until "judgment," whereas CPL 220.60(3) applies "before the imposition of sentence."
[27] RCW 10.73.090.
[28] State v. Perez, 33 Wash.App. 258, 261-262, 654 P.2d 708 (1982).
[29] State v. McLaughlin, 59 Wash.2d 865, 870, 371 P.2d 55 (1962).
[30] We may affirm the trial court on other grounds, if they are supported by the record. Syrovy v. Alpine Resources, Inc., 80 Wash.App. 50, 54-55, 906 P.2d 377 (1995). Unfortunately, because Davis's motion was stymied before the factual basis for his motion was presented, we have no record on which to base a decision on the merits of his motion to withdraw his guilty plea.
[31] Harell, 80 Wash.App. at 804, 911 P.2d 1034. Whether Davis is entitled to substitute counsel on his motion is a discretionary decision for the trial court. Davis cannot force substitute counsel simply by raising an ineffective assistance claim. State v. Rosborough, 62 Wash.App. 341, 346, 814 P.2d 679 (1991).
[32] 122 Wash.2d 73, 856 P.2d 1076 (1993).
[33] Olivas, 122 Wash.2d at 97-98, 856 P.2d 1076.
[34] 122 Wash.App. 448, 94 P.3d 345 (2004).
[35] Surge, 122 Wash.App. at 450, 459, 94 P.3d 345.
[36] Surge, 122 Wash.App. at 459, 94 P.3d 345.
[37] Surge, 122 Wash.App. at 450, 94 P.3d 345. Similarly, in U.S. v. Kincade, 379 F.3d 813 (2004) the Ninth Circuit recently upheld a federal law that requires individuals who have been convicted of certain federal crimes and who are incarcerated, on parole, probation, or supervised release, to provide federal authorities with a DNA sample. U.S. v. Kincade, 379 F.3d 813, 832 (2004) (rehearing en banc). A plurality of the court, en banc, held that, "[w]hile not precluding the possibility that the federal DNA Act could satisfy a special needs analysis," the statute was consistent with the Fourth Amendment based on a totality of the circumstances analysis. Kincade, 379 F.3d at 832. A concurring judge sided with the plurality based on the special needs theory. Kincade, 379 F.3d at 840 (Gould, J. concurring).
[38] WAC 446-75-060. RCW 43.43.759 authorizes the Washington State Patrol to adopt rules implementing the statute.
[39] 122 Wash.App. 725, 94 P.3d 1002 (2004).
[40] S.S., 122 Wash.App. at 728, 94 P.3d 1002; Laws of 2002, ch. 289, § 2.
[41] Davis also submitted a statement of account due, which indicates that King County Prosecutor Norm Maleng, the Department of Corrections, and other debtors collectively owe him four million dollars for the unauthorized use of his name on the guilty plea and judgment and sentence.