## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

v.

JEFFREY ALLEN COOK,

                Appellant.

No. 77443-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 22, 2019

LEACH, J. — Jeffrey Allen Cook appeals his conviction for communication with a minor for immoral purposes. He challenges the constitutionality of his Alford[1] plea, claiming that the inadequate medical care he received in jail to treat his neurological condition amounted to coercion making his plea involuntary. But Cook does not show that the jail provided inadequate care. We affirm.

## BACKGROUND

In May 2017, Cook followed a 12-year-old girl into the employee-only section of a store. There he told her that he would take off her pants and grab

_____

[1] North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

her "pussy."[2] The State charged him with felony communication with a minor for immoral purposes. The court held him on $50,000 bail.

Cook has a traumatic brain injury and experiences related symptoms. While in jail, he experienced ongoing seizures. Cook twice asked the trial court to release him from pretrial confinement. He claimed that the jail could not adequately address his medical issues. He submitted X-rays as evidence of his brain injury. His trial counsel stated that Cook had received only pain and seizure medications in jail and his condition was worsening. And his counsel stated that he had an appointment with a physician at the University of Washington (UW) that was delayed because he was in jail.

The court heard from Pascal Herzer, a representative of the King County jail. Herzer told the court that he gave Cook's X-rays to Dr. Benjamin Sanders, the medical director of the Jail Health Services (JHS) division of the King County jail. Sanders told Herzer that JHS was aware of Cook's medical issues, was able to treat Cook as needed, and could refer and transport him to a specialized physician if necessary. Herzer stated, "[T]here is certainly no evidence that has been provided to us that Jail Health is not able to appropriately treat whatever medical condition is being alleged."

The court denied both of Cook's release requests. After the second denial, Cook stated, "I'll take [the prosecutor's] deal. Let me get out of here." In

---

[2] These facts are from the certification for determination of probable cause, which Cook stipulated the trial court could use as the factual basis for his guilty plea.

September 2017, Cook entered an Alford plea. He denied guilt but agreed that the State had substantial evidence upon which a trier of fact could find him guilty of an amended charge of misdemeanor communication with a minor for immoral purposes. The State recommended a suspended sentence of 364 days on the condition that Cook serve 6 months in jail. Cook affirmed on the record that he had consulted with his attorney, understood the charge against him and the rights he was giving up, understood that the court could impose any sentence up to the statutory maximum, and was pleading guilty freely and voluntarily. Cook's trial counsel stated that he and Cook had spent "an immense amount of time" having "infinite discussions" about the plea agreement. His counsel stated that Cook was aware of the rights he was giving up and was "confident" that his plea was knowing, intelligent, and voluntary. The trial court then engaged in a colloquy with Cook and found that he was "knowingly, willingly, and voluntarily entering th[e] guilty plea."

Cook requested a lenient sentence because of his medical issues. His trial counsel stated that Cook's childhood trauma, his use of the wrong medication, and his being "in and out of hospitals," made his medical care "probably greater than what . . . the jail can [handle]." Cook told the court that the week of the incident, he was in the UW's emergency room for seizures. He stated that an MRI (magnetic resonance imaging) he had received a year earlier showed damage to his prefrontal cortex. And he stated that a neurologist at UW believed that a stroke may have damaged his frontal lobes. Cook also presented

testimony from social worker Matthew Diamond who worked with Cook at the Downtown Emergency Service Center. Diamond testified that before Cook's incarceration, Cook had an appointment "to get the proper diagnosis and start seeking the correct medical attention that he needs for his issues." Diamond stated that Cook needed to see a neurologist.

The trial court declined to follow either party's recommendation. It sentenced Cook to 364 days in jail. Cook appealed. He also asked the court to reconsider the length of his sentence, asserting that his complex medical history and the jail's inability to provide him the necessary medical care meant "further incarceration can create long range medical issues for when he is finally released." The court denied this request.

Three months after sentencing, Cook made a pro se oral request to overturn his conviction because he felt the jail's inadequate medical care coerced him into pleading guilty. He labeled his request a "writ of habeas corpus" and a "motion to seal." He stated that he received no medical care besides his antiseizure medication until he had been in jail 55 or 56 days. He claimed that he was not able to see his neurologist until he had been in jail for 129 days. He also stated that he had "not received the health care that [he] feel[s] is necessary to protect [his] health" because the doctors he had seen while incarcerated were not seeing "the blood flow issues" in his brain that one of his previous doctors had observed.

The trial court framed Cook's request as a motion for a new trial and evaluated it under CrR 7.5(a)(5). This rule permits a new trial when "a substantial right of the defendant was materially affected" by an "[i]rregularity in the proceedings of the court . . . or abuse of discretion, by which the defendant was prevented from having a fair trial."[3] The court defined the issue as whether Cook made his plea knowingly, intelligently, and voluntarily. Cook agreed that he was asking for a new trial and agreed with the court's characterization of the issue.

The prosecutor stated that Cook did not submit medical testimony supporting his claims at the bail hearings and is an intelligent individual who pleaded guilty voluntarily. Herzer summarized Sanders's declaration, which described the medical care Cook had received in jail. Before Cook pleaded guilty, he saw a registered nurse and received a prescription that the jail filled. After Cook pleaded guilty, he had multiple follow-up appointments with the jail's medical clinic and saw a UW neurologist. Sanders reiterated,

> JHS is actively monitoring and treating Mr. Cook's existing medical concerns. If JHS is unable to address Mr. Cook's concerns within the King County Correctional Facility or the Maleng Regional Justice Center, JHS is able to refer Mr. Cook to an outside provider/specialist as needed. . . . JHS is unaware of any medical concern pertaining to Mr. Cook that it cannot either treat itself or refer to an outside provider.

The trial court denied Cook's request for a new trial, stating that Cook did not show a "manifest injustice" had occurred. It noted that the previous trial

---

[3] CrR 7.5(a)(5).

judge had found that Cook's decision to enter his guilty plea was knowing, intelligent, and voluntary. The court's written order states, "JHS has listened to the concerns of the defendant and provided appropriate access to care."

## ANALYSIS

Cook contends that his guilty plea was involuntary because he pleaded guilty only to gain access to medical care outside of the jail, which was not providing him adequate care. We disagree.

We review a trial court's denial of a motion for a new trial or to withdraw a guilty plea for an abuse of discretion.[4]

The Fourteenth Amendment's due process clause requires that a defendant's guilty plea be knowing, voluntary, and intelligent.[5] CrR 4.2 protects criminal defendants by mandating that a defendant enter into a guilty plea voluntarily and by requiring the trial court to ensure that the facts support a plea. "[T]he record of the plea hearing must affirmatively disclose a guilty plea was made intelligently and voluntarily, with an understanding of the full consequences of such a plea."[6] A defendant's written statement on a plea of guilty in compliance with CrR 4.2(g) provides prima facie verification of its constitutionality.[7] "[W]hen the written plea is supported by a court's oral inquiry

---

[4] State v. Williams, 96 Wn.2d 215, 221, 634 P.2d 868 (1981); State v. Wilson, 162 Wn. App. 409, 414, 253 P.3d 1143 (2011).
[5] State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006); Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).
[6] Wood v. Morris, 87 Wn.2d 501, 502-03, 554 P.2d 1032 (1976).
[7] State v. Davis, 125 Wn. App. 59, 68, 104 P.3d 11 (2004).

on the record, 'the presumption of voluntariness is well nigh irrefutable.'"[8]  "[A] defendant who seeks to later retract his admission of voluntariness will bear a heavy burden in trying to convince a court or jury that his admission in open court was coerced."[9]

CrR 4.2(f) governs motions to withdraw guilty pleas before judgment.  It requires the court to allow a defendant to withdraw a plea to correct a "manifest injustice."[10]  CrR 7.8 provides for motions to withdraw guilty pleas after judgment, such as when an excusable irregularity exists.[11]  "While correction of a manifest injustice is a sufficient basis to permit withdrawal of a guilty plea under CrR 4.2(f), withdrawal of [a] guilty plea [after the judgment was entered] must also meet the requirements set forth in CrR 7.8."[12]

Here, the trial court improperly cited CrR 7.5, which governs when a court may grant a defendant a new trial.  And although Cook asked to withdraw his plea after the court entered the judgment, the court held that Cook's guilty plea was not a "manifest injustice," the standard used when a defendant asks to withdraw his guilty plea before the court has entered the judgment.  Regardless, Cook does not show that his guilty plea was not knowing, intelligent, and voluntary.

---

[8] Davis, 125 Wn. App. at 68 (quoting State v. Perez, 33 Wn. App. 258, 262, 654 P.2d 708 (1982)).
[9] State v. Frederick, 100 Wn.2d 550, 558, 674 P.2d 136 (1983).
[10] CrR 4.2(f).
[11] CrR 7.8(b)(i).
[12] State v. Lamb, 175 Wn.2d 121, 128, 285 P.3d 27 (2012).

Cook signed a written statement on a plea of guilty in compliance with CrR 4.2(g). Both the prosecutor's and the trial court's inquiries on the record support this plea. Although Cook stated that he did not receive the care that he felt he needed to protect his health, he did not present any evidence showing that the jail did not or was unable to provide adequate care. Nor did he present any medical testimony to support his own testimony, his trial counsel's statements, or Diamond's testimony about his medical issues. He does not show that the trial court abused its discretion by upholding his plea.

## CONCLUSION

We affirm.

_Leach, J._

WE CONCUR: