IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77580-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DARYL H. RHODES, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 29, 2019 |

ANDRUS, J. — Daryl Rhodes seeks to invalidate his plea of guilty to attempted second degree burglary, attempted second degree identity theft, and second degree vehicle prowl, arguing he was misadvised of the sentencing consequences of that plea. We reject this argument and affirm.

## FACTS

The State charged Rhodes with one count of second degree burglary. Following plea negotiations, Rhodes agreed to plead guilty to attempted second degree burglary, attempted second degree identity theft, and second degree vehicle prowl. In exchange, the State agreed to recommend a residential drug offender sentencing alternative (DOSA) sentence under RCW 9.94A.660, with 3 to 6 months of in-patient treatment and 24 months of treatment while on community custody.

During the plea hearing, the prosecutor informed Rhodes that he faced a standard sentencing range for the attempted burglary charge of 16.5 to 21.75 months and that the charge had a statutory maximum term of 5 years in prison. Rhodes acknowledged on the record that he had talked to his attorney about these possible sentences. The following exchange then occurred:

> [Prosecutor]: ... I should note and it's important you understand, sir, that if you're convicted of any new crimes before sentencing or any additional criminal history is discovered, the standard sentence range and the State's recommendation could increase, and that—and it could trigger some sort of mandatory penalty. Do you understand that?
>
> [Rhodes]: Yes.
>
> [Prosecutor]: Do you understand that if that were to happen, that's not a reason to go back and change your mind about pleading guilty today. Pleading guilty today is a final decision. Do you understand that?
>
> [Rhodes]: Yes.

Rhodes also acknowledged he had read through the statement of defendant on plea of guilty (plea statement) with his attorney. Paragraph 6(d) of the plea statement provided:

> If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendations may increase or a mandatory sentence of life imprisonment without possibility of parole may be required by law. Even so, I cannot change my mind and my plea of guilty to this charge is binding on me.

(Emphasis added.) In addition, paragraph 12 of the document provided, "My lawyer has explained to me, and we have fully discussed, all of the above paragraphs. I understand them all."

Rhodes told the trial court that his plea was knowing, voluntary, and intelligent. Rhodes answered "Yes," when asked by the trial court if he knew the penalty and sentencing consequence of his pleas. He stated he had no further questions and did not need clarification. The trial court stated it was convinced Rhodes was "proceeding in a constitutional, acceptable manner," and signed the plea statement, finding that Rhodes' plea of guilty was "knowingly, intelligently and voluntarily made" and that Rhodes understood the charges and the consequences of the plea.

Rhodes was released pending sentencing, but then failed to appear for his sentencing hearing and was later arrested on a bench warrant. While out of custody, Rhodes committed two additional burglaries and was subsequently convicted of these charges. As a result of these new convictions, consistent with the warning he had been given at his plea hearing, Rhodes' standard sentencing range changed from 16.5 to 21.75 months to 38.25 to 51 months. The State also refused to recommend a DOSA sentence, and instead, sought a 51-month sentence, which was at the high end of his sentencing range on the felony.

At Rhodes' request, and over the State's objection, the trial court sentenced him to a prison-based DOSA pursuant to RCW 9.94A.662, with 22.3 months in custody and 22.3 months of community custody, for a total of 44.6 months. Rhodes appeals.

## ANALYSIS

Rhodes argues his plea is invalid because he was incorrectly advised that the court could sentence him to life in prison for his conviction. The record does not support this argument.

A defendant's guilty plea is valid if it is knowing, voluntary, and intelligent. State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006); see also CrR 4.2(d). "A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences." State v. Buckman, 190 Wn.2d 51, 59, 409 P.3d 193 (2018). The State must prove that Rhodes entered his plea voluntarily and knowingly. State v. King, 78 Wn. App. 391, 396, 897 P.2d 380 (1995). There is a strong public interest in the enforcement of voluntarily and intelligently made plea agreements. State v. Codiga, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008). If a plea agreement is based on misinformation, a defendant may choose to withdraw the plea. State v. Walsh, 143 Wn.2d 1, 8-9, 17 P.3d 591 (2001).

Rhodes' appeal is based on paragraph 6(d) of his plea statement in which he was notified that if convicted of new crimes, "a mandatory sentence of life imprisonment without possibility of parole may be required by law." Rhodes argues that this language, despite being mandated by CrR 4.2(g), somehow misinformed him as to the sentence he might face if convicted of new crimes because the trial court did not have the authority to sentence him to life in prison for attempted second degree burglary. But Rhodes' argument rests on a misreading of paragraph 6(d).

Paragraph 6(d) did not inform Rhodes that he would face life in prison if convicted of new crimes after pleading guilty. Paragraph 6(d) is drafted this way to cover a wide range of possibilities for different defendants with differing criminal histories. For some defendants, depending on the charges to which they plead guilty and the seriousness of any additional convictions they may commit, a

sentencing court may be required to impose life imprisonment. See, e.g., RCW 9.94A.030(38), RCW 9.94A.570 (under "persistent offender" statutes, third "most serious offense" results in mandatory life sentence). The words "may" and "or," as used in Paragraph 6(d), indicate possible outcomes of further criminal activity. "May" indicates possibility, Black's Law Dictionary (9th ed. 2009), while "or" indicates choice between alternatives, Webster's Third New International Dictionary 1585 (2002). There is nothing ambiguous about this language.

The purpose of paragraph 6(d) is to make sure a defendant understands he may not withdraw a guilty plea if later convicted of new crimes and the additional convictions change his standard sentencing range or the prosecutor's sentence recommendation. This paragraph advised Rhodes that if he committed new crimes after entering his plea and before being sentenced, it was possible the prosecutor's sentencing recommendation could change or, as the prosecutor stated during the plea hearing, these convictions could trigger "some sort of mandatory penalty." And in fact, Rhodes did commit new crimes, his sentencing range did change, and the prosecutor's recommended sentence did as well—just as he was informed at his plea hearing.

This case is distinguishable from the recent Supreme Court ruling in Buckman. In that case, Buckman, while 17 years old, had a sexual relationship with a 13 year old. 190 Wn.2d at 54. Buckman pleaded guilty to second degree rape of a child. Id. at 55. On his plea form and during his plea colloquy, both the State and the trial court misinformed him that he faced a maximum sentence of the possibility of life in prison and a lifetime of community custody. Id. However, because Buckman was only 17 at the time of his relationship with the victim, RCW

9.94A.507(2) rendered the statutory maximum of life in prison and lifetime community custody inapplicable to him. Id. Buckman could only be sentenced to a maximum of 114 months and 3 years of community custody. Id. The Supreme Court held that "Buckman was misinformed of his possible sentencing consequences and this misinformation rendered Buckman's plea involuntary." Id. at 60.[1]

Unlike in Buckman, Rhodes was not misinformed as to the maximum sentence he faced for the charges to which he pleaded guilty. Rhodes was expressly informed in the plea colloquy and in the written plea statement that the maximum sentence for attempted second degree burglary was five years, and based on his criminal history and offender score at that time, his standard range for the attempted burglary charge was 16.5 to 21.75 months. He was notified this range could change if he committed new crimes before he was sentenced. Rhodes was thus correctly notified of the sentencing consequences of his guilty plea pursuant to CrR 4.2. See State v. Kennar, 135 Wn. App. 68, 74-75, 143 P.3d 326 (2006) (defendant was not misinformed about sentencing consequences of plea when informed that maximum sentence was life in prison; CrR 4.2 requires defendant to be told of both the applicable sentencing range and maximum statutory sentence).

Moreover, the evidence demonstrates Rhodes understood he was not at risk for being sentenced to life in prison as a persistent offender. He initialed the

---

[1] Because Buckman's motion to withdraw the guilty plea constituted a collateral attack on his sentence, the Supreme Court determined he had to establish that had he not been misinformed, he would not have pleaded guilty. Id. at 69. Buckman failed to make this showing. Id. at 70. The State concedes in this direct appeal that the collateral attack standard does not apply to Rhodes.

"persistent offender" paragraph, stricken from the plea statement, as inapplicable to him, and he acknowledged at the plea hearing that he understood the "persistent offender" paragraph, along with others that were crossed out and initialed by him, did not apply to him. Rhodes' signature on his plea statement, in compliance with CrR 4.2(g), and acknowledgment of it during the plea hearing are prima facie verification of the plea's voluntariness. State v. Davis, 125 Wn. App. 59, 68, 104 P.3d 11 (2004). And, as here, where Rhodes' "written plea is supported by [the] court's oral inquiry on the record, 'the presumption of voluntariness is well nigh irrefutable.'" Id. (quoting State v. Perez, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)). The record shows that Rhodes voluntarily and knowingly pleaded guilty and that he was not misinformed of the sentencing consequences of his plea. We conclude Rhodes' guilty plea is valid.

Affirmed.

WE CONCUR:

Andrus, J.